**In re ANC RENTAL CORP., et al., Debtors.**

**The Hertz Corporation, et al., Appellants,**

v.

**ANC Rental Corp., et al., Appellees.**

Bankruptcy No. 01–11220 (MFW).

Civil Action Nos. 02–154, 02–288 to 02–299, 02–360, 02–364, 02–476, 02–526 to 02–543, 02–564 to 02–575, 02–1265 to 02–1273.

Adversary Nos. 02–01, 02–06, 02–83 to 02–88, 02–91 to 02–96, 02–122, 02–123, 02–155 to 02–171, 02–177 to 02–187, 02–191, 02–194 to 02–202.

United States District Court, D. Delaware.

July 19, 2002.

Elizabeth A. Wilburn, Bonnie Glantz Fatell, Mark J. Packel, Blank, Rome, Comisky & McCauley, Wilmington, DE, for Debtors.

Ian Connor Bifferato, Bifferato, Bifferato & Gentilotti, P.A., Wilmington, DE, for Hertz Corp.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE, for Avis Rent A Car System Inc.

Don Beskrone, Wilmington, DE, U.S. Trustee.

### MEMORANDUM AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

On November 13, 2001, the debtors, Alamo Rent–A–Car ("Alamo"), National Car Rental System ("National"), and ANC Rental Corp ("ANC") filed a petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. ANC is the parent company of Alamo and National and is also the debtor-in-possession. The case was assigned to the Honorable Mary F. Walrath.

Alamo and National both maintain customer service booths, or concessions, at various national airports. Prior to the bankruptcy, Alamo and National engaged in a competitive bidding process to obtain the concession contracts. The contracts were negotiated between Alamo and National and the appropriate local airport board or governing authority. The appellants, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc. ("Avis"), also hold similar contracts with local airport authorities across the nation. Nevertheless, neither Avis nor Hertz is a party to any of the contracts between Alamo or National and the local airport boards.

On February 27, 2002, Hertz and Avis filed the first of several appeals from the orders of the Bankruptcy Court for the District of Delaware.[1] The appellants seek review of the orders of the bankruptcy court that allowed Alamo and National to assign their airport concession contracts to ANC, which would then assume the contracts as the debtor-in-possession pursuant to § 365 of the Bankruptcy Code. See 11 U.S.C. § 365.

The appellants argue, inter alia, that the airport concession contracts require the concessionaires to insure a minimum annual profit, or minimum annual guarantee ("MAG"). They also allege that the contracts prohibit "dual branding," a practice which would permit a single concessionaire to operate more than one business at the designated concession location. Hertz and Avis contend that the bankruptcy court's orders allow Hertz and Avis to circumvent each of these provisions. The debtors respond that the contracts at issue do not prohibit dual branding and that ANC assumed the contracts cum onere, or with all burdens.

The appellants raise six issues on appeal. Among these issues is whether the bankruptcy court erred in concluding that the appellants lacked standing to object to

---

1. Several subsequent appeals were filed, and these appeals were consolidated for all purposes on June 11, 2002 (Case Nos. 02–154, 02–288 through and including 02–299, 02–360 and 02–364), June 14, 2002 (Case Nos. 02–529 through and including 02–543), and July 9, 2002 (Case Nos. 02–564 through and including 02–575 and 02–1265 through and including 02–1273).

the motions filed by the debtors for the assumption and the assignment of the concession agreements. The court finds that regardless of whether the appellants had standing to object to the motions in the bankruptcy court, they lack standing to bring this appeal. First, they are not "persons aggrieved" by the order of the bankruptcy court. Second, they are attempting to assert rights belonging to a third-party, namely the airport boards in question. For these reasons, the court finds that the appellants lack standing to bring these appeals. Therefore, all of the appeals will be dismissed.

## II. BACKGROUND

### A. Factual Background

The debtor, ANC Rental Corporation, is the parent company of the Alamo and National car rental companies. The appellants, Hertz and Avis, are also engaged in the car rental business.

The rental car industry is particularly active in the nation's airports. However, a business entity cannot operate at an airport without a contract. According to the parties, the normal procedure for obtaining an airport contract operates as follows: The vast majority of the nation's airports are governed by an airport board or some similar body that has authority to oversee airport operations. In turn, the airport boards' decisions are governed by various local statutes and ordinances pertaining to airport operations. These statutes cover may areas, including the selection of vendors for the airport.

Pursuant to their governing statutes, most airport boards employ competitive bidding procedures to ensure that the contract award process is fair and that each bidder meets the airport's criteria for obtaining a contract. Once the airport board has determined that the bidder meets its criteria, the contract will be awarded. The contract will allow the successful bidder to operate a concession, or customer service booth, at the local airport.

In the present case, National and Alamo entered into the competitive bidding process at a number of airports and were awarded concession contracts. The parties apparently do not dispute that the terms of these contracts included a requirement that the concessionaire bring in a certain revenue or profit each year. This figure is called the minimum annual guarantee ("MAG"). Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth, which is allegedly known in the airport concession industry as "dual branding." The appellants appear to concede that neither the applicable ordinances or statutes explicitly forbid dual branding. However, they contend that such a prohibition can and should be read into the contracts, or alternatively, the governing statutes. The parties do not dispute that neither Hertz nor Avis is a party to the contracts between the airport boards and the debtors.

### B. Procedural Background

On November 13, 2001, the debtors filed a petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Delaware. As a part of their reorganization efforts, the debtors decided that since both Alamo and National are owned by the same parent, they could save money by consolidating their operations at the airports where both companies operated concessions. They proposed to do this by having either National or Alamo reject its concession contract while the other debtor would assign the remaining contract to ANC, who would assume the contract as the debtor-in-possession. All parties agree that the pro-

posed plan, if successful, will help the debtors increase their revenue. Hertz and Avis estimate that the debtors' market share will increase by 1.5% (at their expense) if the consolidation plan is successful.

To implement their plan, the debtors filed a motion in the Bankruptcy Court seeking permission to go forward with the rejections, assignments, and assumptions pursuant to section 365 of the Bankruptcy Code. The appellants objected to the motion, but the affected airport authority did not object.[2] After conducting a hearing in the matter, Judge Walwrath granted the order on January 25, 2002. Hertz and Avis promptly appealed that order.

The January 25 order pertained to only one airport. Thus, in order to fully implement their plan, the debtors were required to seek further orders from the Bankruptcy Court. The debtors therefore sought a second order which would permit consolidation at six additional airports. The appellants renewed their objection. However, the affected airport boards again failed to object. Judge Walrath granted the order on March 15, 2002. Hertz and Avis filed another appeal.

The debtors continued to file motions under section 365 and the appellants continued to object to the grant of these motions. On May 3, Judge Walrath entered an order granting yet another section 365 motion. In the opinion that accompanied the order, Judge Walrath addressed several issues.[3] First, she found that the appellants did not have standing to object to the orders under section 1109 of the Bankruptcy Code, 11 U.S.C. § 1109. Judge Walrath stated:

It is clear that Hertz and Avis do not have standing to be heard on the Debtors' Motions to assume and assign the Concession Agreements to ANC. Neither Hertz nor Avis are creditors of the Debtors nor do they have any direct contractual or other legal relationship with the Debtors. They are merely competitors in the same industry. The rights they assert here are not their own, they are the rights of the Airport Authorities. Section 365 is designed to protect the rights of parties with whom debtors have contractual relationships, in this case the Airport Authorities. If the Airport Authorities choose not to oppose the Debtors' Motions, neither Hertz nor Avis have standing to assert the Airport Authorities' rights.

Avis and Hertz argue, however, that the Third Circuit has a more expansive view of standing in bankruptcy proceedings which is broad enough to encompass their interests in ensuring that the concessions at airports where they operate are granted in accordance with applicable law (bankruptcy and non-bankruptcy). They cite particularly the Third Circuit decision in *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985). However, the *Amatex* case is clearly distinguishable from this case and cannot be read for the broad proposition that parties who have no relationship to the debtors have standing. In *Amatex*, the Court held that future asbestos claimants against the debtor had standing to be represented in the debtor's chapter 11 proceeding. The Court noted that the examples of a party in interest contained in section 1109 (creditors, shareholders, committees, the debtor and trustee) are not exclusive and stated that:

---

**2.** The airport authority in this instance was the Kenton County Airport Authority, which governs the Cincinnatti, Ohio airport.

**3.** The opinion is reported at 278 B.R. 714 (Bankr.D.Del.2002).

We conclude that future claimants are sufficiently affected by the reorganization proceedings to require some voice in them. Moreover, none of the parties currently involved in the reorganization proceedings have interests similar to those of future claimants, and therefore future claimants require their own spokesperson.... Accordingly, because of the adverse interests of the other parties, it would appear that future claimants require their own representatives. *Id.* at 1042–43.

The interests of Avis and Hertz are not at all analogous to the interests of the future asbestos claimants in *Amatex*. Hertz and Avis do not now, and never will, have a direct claim against the Debtors. That is, they are not future potential claimants against the Debtors. Rather, the only interests Avis and Hertz have (if any) are their contractual interests vis-a-vis the Airport Authorities and the interests they assert that the Airport Authorities have against the Debtors. *Amatex* did not alter the general prohibition against one asserting the legal rights of others.

Furthermore, there is no basis in this case for Hertz and Avis to assert that there is no one who has standing in the case who can adequately represent the interests which Hertz and Avis seek to assert. In fact, the Airport Authorities have standing to assert those exact interests and, therefore, those interests are already adequately represented in the bankruptcy proceedings. Thus, in contrast to the situation in *Amatex*, the interests of Hertz and Avis are not without an advocate in the bankruptcy proceeding. Since they are not direct claimants against the Debtors and the interests they seek to assert are already represented in the proceedings, we conclude that Hertz and Avis have no standing to be heard in this case.

*In re ANC Rental Corp.*, 277 B.R. 226, 232–33 (Bankr.D.Del.2002).

The bankruptcy court also rejected the appellants' arguments under section 365. Although the appellants argued that the section 365(c)(1) prevented the debtors from implementing their plan without the consent of the airport board, the Bankruptcy Court found that section 365(c)(1) did not apply because the applicable statutes did not require consent to assignment and the concession contracts were not personal service contracts. The bankruptcy court further found that the debtors' plan met the requirements of section 365(f). The court concluded that the debtors had a sound business purpose for consolidating the operations because the consolidation would result in a considerable reduction in operating expenses without a reduction in revenue. The Bankruptcy Court also found that ANC was taking the contracts *cum onere*, and rejected the appellants argument that the concession contracts forbid dual branding.

In the following months, the Debtors filed additional motions under section 365 seeking permission to assign, reject, and assume at four additional airports. The bankruptcy court again found that section 365(c)(1) was inapplicable and that the debtors' plan was appropriate under section 365(f). The appellants again objected. Although they acknowledged that the bankruptcy court had previously concluded that they lacked standing, Hertz and Avis argued that the bankruptcy court had based this conclusion on the erroneous proposition that they were not creditors of the estate. The appellants alleged that they were in fact creditors of ANC. Nevertheless, the bankruptcy court again found that they did not have standing to be heard, stating:

The Debtors objected to our consideration of the objections of Hertz and Avis, asserting neither has standing to be heard on the Motions. Although we had permitted Hertz and Avis to press their objections at the hearing, we agree with the Debtors that they have no standing to be heard on the Motions relating to the Manchester and Raleigh–Durham airports for the reasons set forth in our May 3 Opinion. Hertz and Avis argue, however, that the May 3 Opinion on standing is premised on an erroneous finding of fact that neither Hertz nor Avis asserts it is a creditor, a contention the Debtors do not dispute. This fact, however, was not central to our decision on standing. As we noted in the May 3 Opinion, even creditors do not have standing to raise the rights of a landlord or contract party under section 365. *See, e.g., In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992)(creditor which held mortgage and assignment of rents in building which debtor had sold and leased back from landlord had no standing to enforce provision of § 365 which requires debtor to assume or reject an unexpired lease of non-residential real estate within 60 days of bankruptcy filing). While section 1109 allows a creditor to be heard on any issue in a bankruptcy case, it does not change the general principle of standing that a party may assert only its own legal interests and not the interests of another. *Id.* at 169. Consequently, a general creditor such as Avis does not have standing to assert the rights of the Airport Authorities under section 365(c) and/or (f).

*In re ANC Rental Corp., Inc.*, 278 B.R. 714, 718–19 (Bankr.D.Del.2002).

The debtors have continued to file motions pursuant to section 365 and the bankruptcy court has granted each motion. To date, no affected airport board has objected to the entry of any of these orders. Hertz and Avis have appealed each order. By the court's count, there are currently sixty-six appeals docketed in the District Court. In their consolidated briefs on appeal, the appellants argue that the Bankruptcy Court erred in finding that they lacked standing under section 1109. They also argue that the Bankruptcy Court's conclusions regarding section 365 are inaccurate.

The court finds that even if the Bankruptcy Court incorrectly concluded that the appellants lacked standing to be heard in the bankruptcy court, they lack standing to bring this appeal. The court will now explain the reasons for its decision.

## III. STANDARD OF REVIEW

■ In reviewing a case on appeal, the Bankruptcy Court's factual determinations will not be set aside unless they are clearly erroneous. *See Mellon Bank, N.A. v. Metro Comm., Inc.*, 945 F.2d 635, 641 (3d Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1476, 117 L.Ed.2d 620, (1992). Conversely, a Bankruptcy Court's conclusions of law are subject to plenary review. *See Metro Comm., Inc.*, 945 F.2d at 641. Mixed questions of law and fact are subject to a "mixed standard of review." *See id.* at 641–42. Under this "mixed standard of review," the appellate court accepts findings of "historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to historical facts." *Id.*

## IV. DISCUSSION

■ Article III of the United States Constitution states that the judicial power of the federal government "shall be vested in one supreme Court, and in such inferi-

or Courts as the Congress may from time to time ordain and establish." U.S. Const. Art. III, § 1. However, the jurisdiction of the federal courts extends only to "cases and controversies." *See Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To that end, several doctrines have been created to ensure that federal courts only hear cases and controversies. Of these, the "doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." *Id.* A litigant has standing where he or she alleges "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. 3315.

This case presents two distinct standing issues: whether the debtors waived the issued of standing in the bankruptcy court, and whether the appellants have standing to bring this appeal. The court will first address the waiver issue. The court will then consider whether the appellants have standing in this court.[4]

### A. The Standing Issue Has Not Been Waived by the Debtors

Hertz and Avis argue that the debtors cannot assert standing at this point because they waived their standing objections in the bankruptcy court. However, the appellants fail to realize that standing is a jurisdictional requirement. Thus, it is never waived, and can be asserted at any stage in the litigation. *See United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995) ("The question of standing is not subject to

waiver."); *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). Moreover, even if a party fails to raise the issue of standing, because standing is a jurisdictional requirement, the court has the authority and the duty to raise the issue *sua sponte* when necessary. *See Steele v. Blackman,* 236 F.3d 130, 134 n. 4 (3d Cir.2001) ("[W]e are required to raise issues of standing *sua sponte* if such issues exist.").

The court therefore concludes that the debtors did not waive any issues of standing in the bankruptcy court. Further, as previously noted, even if the debtors had "waived" the issue, the court has the authority to raise the issue now and will do so.

### B. Standing to Bring these Appeals

In their briefs on appeal, Hertz and Avis argue that they had standing to be heard in the bankruptcy court pursuant to section 1109 of the bankruptcy code. Section 1109 states:

A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

Hertz and Avis argue that as creditors of the bankrupt estate, they have an unconditional right to be heard in the bankruptcy court. The appellants further argue

---

4. As discussed *infra,* the court finds that the parties lack standing to bring this appeal. Because standing is a jurisdictional requirement, the court therefore has no jurisdiction to consider or decide the merits of the under-

lying appeals and will not do so. *See ACLU-NJ of New Jersey v. Township of Wall,* 246 F.3d 258, 261 (3d Cir.2001) (noting that where appellants lacked standing, the court could not reach the merits of the appeal).

that the Third Circuit has broadly interpreted section 1109, as evidenced in *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985). In *Amatex*, the Third Circuit stated that section 1109 could be broadly construed to include even those parties not expressly mentioned in the statute. *See id.* at 1042. ("The Code does not include a definition of party in interest; it is clear, however, that the term 'party in interest' is not limited by the small list of examples in § 1109(b) ... And courts have not viewed the examples of parties in interest as being exhaustive.").

■ Despite their arguments regarding standing in the bankruptcy court, the appellants fail to recognize that a party that has standing to be heard in the bankruptcy court does not necessarily have standing to appeal an order of the bankruptcy court. The Third Circuit has stated that although section 1109 "confers broad standing at the trial [bankruptcy court] level," "courts do not extend that provision to appellate standing." *In re PWS Holding Corp.*, 228 F.3d 224, 248–49 (3d Cir.2000). The Court of Appeals further noted, "Appellate standing in bankruptcy cases is more limited than standing under Article III or the prudential requirements associated therewith." *Id.* at 248. To that end, the court declared, "appellate standing in bankruptcy cases is limited to 'person[s] aggrieved.'" *Id.* at 249 (citations omitted). The Third Circuit further explained, "We consider a person to be aggrieved only if the bankruptcy court's order 'diminishes their property, increases their burdens, or impairs their rights.' Thus, only those 'whose rights or interests are directly and adversely affected pecuniarily' by an order of the bankruptcy court may bring an appeal." *Id.* (citations omitted).

■ The court interprets the Third Circuit's language as meaning that parties can demonstrate that their interests are "directly and adversely" affected if the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights." Hertz and Avis can only claim to be affected in their roles as creditors or competitors. The court finds that neither Hertz nor Avis is directly and adversely affected in either capacity.

The court acknowledges that in their role as creditors, Hertz and Avis may be directly affected by the actions of the bankruptcy court. Nevertheless, as creditors, they are not *adversely* affected by the orders of the bankruptcy court. As the bankruptcy court noted, the debtors' consolidation will result in a reduction in operating expenses without a reduction in revenue. The plan will therefore enable the bankrupt estate to save money. These savings will, of course, increase the funds in the bankrupt estate. If the estate is increased, the number of creditors that can be paid and the amount available to be paid to these creditors will also be increased. Thus, the appellants cannot argue that the reorganization diminishes their property or increases their burdens as creditors.

The appellants rely more heavily on their status as direct competitors of Alamo and National. They claim that if the consolidation permitted by the bankruptcy court is permitted to continue, Alamo and National will increase their market share at the expense of Hertz and Avis. The court acknowledges that as competitors, Hertz and Avis may be adversely affected by the bankruptcy court's orders to the extent that ANC's consolidation efforts will cause them to lose market share. Nonetheless, the appellants, as competitors, must be adversely affected regarding their property, burdens, or rights. Although it could be argued that a loss in market share is a loss in property, the

court concludes otherwise. The court has not found a single case in the bankruptcy context addressing whether a diminution in market share is a loss of property. However, in other contexts, courts have held that a company's market share is not property. *See Coalition for Government Procurement v. Federal Prison Industries,* 154 F.Supp.2d 1140, 1153 (W.D.Mich.2001) ("A loss of market share is not a direct appropriation of private property requiring compensation under the Fifth Amendment takings jurisprudence."); *Anti–Monopoly v. Hasbro, Inc.,* No. 94 Civ. 2120, 1995 WL 380300, at *7 (S.D.N.Y. June 27, 1995) ("While the tort of unfair competition may be flexible and expansive, it does not encompass a claim [where] the only 'property' appropriated is a plaintiff's market share.").[5] The approach presented by these cases is reasonable, particularly in light of the fact that neither Hertz, Avis, Alamo, or National are guaranteed to capture a consistent or defined portion of the rental car market in any given period. Since no one company has a guaranteed portion of the market share (and indeed, can gain or lose market share for any number of reasons completely unrelated to the debtors reorganization), the court finds that the appellants' market share is too tenuous to be considered property.

As to the appellants' burdens, it does not appear that the debtors' consolidation efforts will have an impact on any burden of either Hertz or Avis. Therefore, the court finds that this factor is neutral in the standing analysis.

Finally, the court considers whether the appellants' rights are impacted by the bankruptcy court's order. The court concludes that they are not. For the purposes of these appeals, the court will assume that Alamo and National may gain a slight competitive advantage through consolidation. Additionally, Hertz's and Avis' respective market shares may be slightly diminished if their competitors are allowed to consolidate. Nevertheless, Hertz and Avis do not have an established right to a certain share of the rental car market. Similarly, they do not have a right to be free from competition in the workplace. Wisely, Hertz and Avis do not assert such rights. Rather, they claim that the actions of the bankruptcy court effectively allow Alamo and National to circumvent the provisions of either the airport regulations, the concession contracts, or both. The question is whether the appellants have standing to raise these rights.

Standing in bankruptcy matters turns upon the sections of the code that are asserted. *See In re James Wilson Assoc.,* 965 F.2d 160, 168 (7th Cir.1992) ("To have standing to invoke a statute you must be one of the persons whom the statute is intended to protect."). The motions in question were made pursuant to section 365 of the bankruptcy code. The relevant portions of section 365 state:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (A) applicable law excuses a *party,* other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity

---

5.  To the extent that Hertz and Avis argue that a loss in their market share will result in lost profits, the court similarly concludes that although the issue has not arisen in the bankruptcy context, lost profits are not usually considered property in other contexts. *See* *Colstar Petroleum Co. v. Realty Partners, Inc.,* Nos. 89–2604, 89–2609, 1990 WL 74288, at *5 (4th Cir. May 10, 1990) ("[W]e interpret the ambiguous term 'property' to mean injury to tangible, physical property, and not 'lost profits.' ").

other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such *party* does not consent to such assumption or assignment;

11 U.S.C. § 365(c)(1) (emphasis added).

■ The language of section 365 is clearly intended to protect the rights of those persons or entities who share contractual relationships with the debtors. In other words, in order to invoke the protections provided in section 365, an entity must be a party to a contract with the debtor. As the bankruptcy court twice pointed out, however, neither Hertz nor Avis is a party to the contracts that the debtors seek to assign or reject. Although Hertz and Avis may argue that the bankruptcy court's orders effectively permit the debtors to breach those contracts, thereby effecting their business operations, section 365 gives the right to enforce the breach of those contracts to those who are parties to the contracts, not non-parties such as the appellants.

The court further notes that section 365 will not permit an assignment where "applicable law" prohibits a party from accepting assignment or alternate performance. The appellants could argue that they have standing because the bankruptcy court's orders are—in their opinion—violating the applicable airport laws which allegedly prohibit dual branding. Although section 365 does confer the right to refuse assignment where excused by applicable law, that right is nevertheless conferred only upon *parties* to the contracts at issue. It creates no separate right of enforcement for other creditors of the estate who are not parties to the contract. Therefore, even if the appellants feel that the alleged violation of the law may effect them, they have not demonstrated that they have the legal right to enjoin such a violation.

The court therefore concludes that given the fact that the rights established by section 365 are limited to those who are parties to a contract, non-party competitors such as Hertz and Avis have no independent rights of their own to assert under that section. It is clear that the rights in question rest squarely—and solely—with the airport authorities. It is well-settled that a party cannot assert the rights of another. *See PWS Holding,* 228 F.3d at 248 ("Generally, litigants in federal court are barred from asserting the constitutional rights of others."). The Third Circuit has stated that limits on such "third-party" standing "are particularly relevant to appellate standing in bankruptcy proceedings: Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." As the bankruptcy court pointed out in both of its opinions in this case, the airport boards were present and accounted for at all of the relevant bankruptcy hearings. Nevertheless, none of the affected airport boards have objected to the reorganization. More importantly, nothing in the record indicates that the airport boards were or are unable to object. If, for some reason, the airport authorities were unable to assert their rights, it might be permissible for the appellants to assert their rights. *See Amato v. Wilentz,* 952 F.2d 742, 749 (3d Cir.1991) (noting that third-party standing may be appropriate where the absent party is unable to assert its own rights). Absent any indication to the contrary, the court is constrained to conclude that the airport authorities were able, but unwilling, to object. Hertz and Avis may not do so in their stead.

For all of the foregoing reasons, the court concludes that Hertz and Avis have no rights of their own that will be affected by the orders of the bankruptcy court. The court further finds that they cannot assert the rights of the airport authorities. The court thus finds that the appellants' rights, burdens, and property will not be directly and adversely affected by the actions of the bankruptcy court. Therefore, the appellants lack standing to appeal the bankruptcy court's orders.

## V. CONCLUSION

The court concludes that the debtors did not, and indeed could not, waive the issue of standing, and that even if they had, it would not prevent the court from raising the issue *sua sponte* to protect its appellate jurisdiction. After considering the issues of standing, the court concludes that neither Hertz's nor Avis' rights, burdens, or property will be directly and adversely affected by the actions of the bankruptcy court. They therefore lack standing to bring these appeals. Consequently, all of the pending appeals will be dismissed.

For the aforementioned reasons, IT IS HEREBY ORDERED THAT:

1. All of the pending appeals (Case Nos. 02–154, 02–288 through and including 02–299, 02–360 and 02–364, 02–476, and 02–526 through and including 02–543, 02–564 through and including 02–575, and 02–1265 through and including 02–1273) are DISMISSED WITH PREJUDICE for lack of standing.[6]

---

6. This dismissal shall have no affect on any other pending or subsequently filed actions arising under different sections of the bankruptcy code that give the debtors standing to be heard and to appeal.