OPINION
STAPLETON, Circuit Judge.
I.
National Car Rental System (“National”) and Alamo Rent-A-Car (“Alamo”) are owned by ANC Rental Corp. (“ANC”). Despite common ownership, both National and Alamo operate separately — National catering to business travelers and Alamo catering to leisure travelers. On November 13, 2001, National, Alamo, and ANC (referred to collectively as “the Debtors”) filed a petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the District of Delaware.
Prior to filing for bankruptcy, National and Alamo operated separate concessions at airports throughout the country. Concessions are acquired through a public bidding process. The concession agreements are identical except for the compensation to be paid. The Debtors devised a plan, pursuant to the Chapter 11 reorganization, *913 to consolidate their operations at airports where both National and Alamo operated concessions. Under the reorganization, either National or Alamo would reject its concession agreement with the airport. The other debtor would assume its concession agreement with the airport under § 365 and then assign the agreement to ANC. ANC would then operate both the National and Alamo brands pursuant to one concession agreement, resulting in significant savings to the bankrupt parties.
The Debtors sought the approval of the Bankruptcy Court to consolidate an airport concession at the Cincinnati, Ohio airport by this reject, assume, and assign technique. Although the governing airport authority did not object, competitors the Hertz Corporation (“Hertz”) and Avis Rent a Car System, Inc. (“Avis”) (referred to collectively as “Appellants”), who also operate airport concessions, did object to the consolidation. Appellants claimed that allowing the Debtors to operate two companies out of one concession was not a assumption permitted under § 365 because it effectively modified the executory contract to allow two companies to operate from the same concession where the original agreement allowed only one. The Bankruptcy Court granted the Debtors’ request to consolidate airport concessions through the method discussed above.
The Debtors began using the method to consolidate operations at several airports. Appellants continued objecting. Although they had not done so in the initial round of proceedings requesting airport concession consolidations, on March, 15, 2002, the Debtors asserted a standing objection to Appellants’ objections. On May 3, 2002 the Bankruptcy Court granted yet another § 365 motion. The court found that the Appellants did not have standing to object to orders under section 1109 of the Bankruptcy Code. The court stated the following:
[I]t is clear that Hertz and Avis do not have standing to be heard on the Debtors’ Motions to assume and assign the Concession Agreements to ANC. Neither Hertz nor Avis are creditors of the Debtors nor do they have any direct contractual or other legal relationship with the Debtors. They are merely competitors in the same industry. The rights they assert are not their own, they are the rights of the Airport Authorities. Section 365 is designed to protect the rights of parties with whom debtors have contractual relationships, in this case the Airport Authorities.
In re ANC Rental Corp., Inc., 277 B.R. 226, 232 (Bankr.D.Del.2002).
The Debtors continued using the same method under the bankruptcy code to consolidate airport concessions throughout the country and Appellants continued objecting to the assumption and assignment. Appellants pointed out that they actually were creditors of the Debtors. The Bankruptcy Court stated that Hertz and Avis still lacked standing because while “section 1109 allows a creditor to be heard on any issue in a bankruptcy case, it does not change the general principle of standing that a party may assert only its own legal interests and not the interests of another.” The court concluded that “a general creditor such as Avis does not have standing to assert the rights of the Airport Authorities under section 365(c) and/or (f).” 278 B.R. 714, 719 (Bankr.D.Del.2002).
The United States District Court for the District of Delaware heard the consolidated appeal of these objections to the concession agreements. The District Court, noting the difference between standing in bankruptcy court and standing to appeal a bankruptcy court decision in district court, found that “even if the Bankruptcy Court incorrectly concluded that the appellants *914 lacked standing to be heard in the bankruptcy court, they lack standing to bring this appeal.” In re ANC Rental Corp., 280 B.R. 808, 814 (D.Del.2002). The District Court noted that Appellants’ status as creditors would not be adversely affected by the consolidations because the consolidations, by Hertz’ and Avis’ own admission, would reduce the Debtors’ expenses, resulting in more funds in the bankruptcy estate. Id. at 816.
The court determined that Appellants’ objections to the assumptions and assignments relied more heavily on their status as direct competitors to National and Alamo and the fear that the expense reduction caused by consolidating airport concessions will cause Hertz and Avis to lose market share. The District Court held that Hertz and Avis had no standing because they were not “personfs] aggrieved,” because “neither Hertz’s nor Avis’ rights, burdens, or property will be directly and adversely affected by the actions of the bankruptcy court.” Id. at 819.
We will affirm the decision of the District Court.
II.
“The question whether a party has standing to appeal in a bankruptcy case is generally an issue of fact for the district court.” In re O’Brien Environmental Energy, Inc., 181 F.3d 527, 531 (3d Cir.1999). But “[b]ecause the District Court sat as an appellate court, we apply plenary review to its judgment and thus apply the same standards that it applied.” Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V., 310 F.3d 118 (3d Cir. 2002).
III.
The jurisdiction of federal courts is limited to “case[s] or controversies].” Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). However, appellate standing in bankruptcy cases is limited to “persons aggrieved.” In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir.2000). This standard is more restrictive than the “case or controversy” standing requirement of Article III. Travelers Ins. Co. v. H.K Porter Co., Inc., 45 F.3d 737, 741 (3d Cir.1995). Standing is thus “denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the bankruptcy court’s order, are not ‘directly affected’ by that order.” Id. (internal quotation omitted). Appellants have standing as “persons aggrieved” when the “bankruptcy court’s order ‘diminishes their property, increases their burdens, or impairs their rights.’ ” In re PWS Holdings Corp., 228 F.3d at 249 (quoting In re Dykes, 10 F.3d 184, 187 (3d Cir.1993)). “[0]nly those “whose rights or interests are directly and adversely affected pecuniarily’ by an order of the bankruptcy court may bring an appeal.” Id. (quoting In re Dykes, 10 F.3d at 187).
Appellants contend that the Bankruptcy Court’s orders allowing the Debtors to assume and assign concession agreements in order to consolidate their airport operations into one concession is improper under section 365. We agree with the District Court that this complaint relates to Appellants’ status as competitors of the Debtors and not to their status as the Debtors’ creditors.
We hold that any claimed loss in market share or profits by Appellants does not result in them being directly and adversely affected pecuniarily, and does not dimmish their property, increase their burdens, or impair their rights.
The claimed lost market share and/or profits in this case is contingent on several factors unrelated to the Bankruptcy Court’s order. In Travelers Insurance Co., we held that a person is not “ag *915 grieved” if that person’s interest is “too contingent to not have been ‘directly affected’ ” by the Bankruptcy Court’s order. 45 F.3d at 742. As the District Court observed, “no one company has a guaranteed portion of the market share ... and indeed, can gain or lose market share for any number of reasons completely unrelated to the debtors reorganization.” In re ANC Rental Corp., 280 B.R. at 817. The fact that bankrupt competitors can reduce their expenses pursuant to the bankruptcy code mil not necessarily lead to loss in market share or profits for other companies on sound financial footing who are free to compete.
Appellants assert that they have a “far more direct economic interest in the requested relief than do the airport authorities.” Appellant’s Brief at 64. They cite In re Braniff Airways, Inc., 700 F.2d 935, 942-943 (5th Cir.1983), for the proposition that a competitor can successfully challenge an assumption under § 365. But In re Braniff Airways involved a situation where a competitor was granted the right to lease a space at Washington National Airport subject to the debtor’s right to recapture the space. Id. at 943. When the debtor attempted to retake and assume and assign the leased space, the competitor would necessarily be precluded from using the space that it was presently occupying. Thus, the pecuniary loss was not too attenuated or contingent to be considered to have had a direct and adverse effect on the complaining party’s pecuniary rights.
The other case cited by the Appellants for the proposition that standing is determined by who suffers the most direct economic effect is In re Westwood Community Two Ass’n, Inc., 293 F.3d 1332 (11th Cir.2002). In that case, members of a homeowners association were allowed to object to a Bankruptcy Court’s decision regarding the bankrupt homeowners association. But in that case, the affect on pecuniary rights was also direct. The Bankruptcy Court had allowed damages claims that were rendered in a case under the Florida and Federal Fair Housing Acts. Id. at 1333. The members of the homeowners association were charged a “special assessment” of $7,250 to pay for damages levied against the association. Id. The damage to the members was not contingent and it was directly caused by the Bankruptcy Court’s decision to allow the damages claims. See id. at 1336 (“This order, in which the bankruptcy court denied reconsidering the allowed claims, directly and adversely affects pecuniarily the [members] because the Trustee assessed the ... members to satisfy these claims.”). It is clear that the cases cited by the Appellants are distinguishable and that the Appellants have not claimed a sufficiently direct adverse affect on a pecuniary right to have standing to appeal the Bankruptcy Court’s order.
We also agree with the District Court finding that “[s]ince no one company has a guaranteed portion of the market share ... the appellant’s market share is too tenuous to be considered property.” In re ANC Rental Corp., 280 B.R. at 817.
The Appellants argue that Topps Chewing Gum, Inc. v. Major League Baseball Players Ass’n, 641 F.Supp. 1179 (S.D.N.Y. 1986), 3M Innovative Props. Co. v. Avery Dennison Corp., 185 F.Supp.2d 1031, 1041 (D.Minn.2002), and In re SRJ Enterprises, Inc., 150 B.R. 933, 941 (Bankr.N.D.Ill. 1993), show that lost market share and lost profits give rise to compensable claims. However, Topps Chewing Gum and SM Innovative Props, involved the distinct assertion that lost market share could be considered as a measure of damages following the violation of statutorily recognized rights, not that companies have a property right in its market share. See *916 Topps Chewing Gum, Inc., 641 F.Supp. at 1191 (citing the adequacy of damages for lost market share as a reason for denying a preliminary injunction in an antitrust action); 3M Innovative Properties Co., 185 F.Supp.2d at 1042 (stating that lost market share was not enough to justify granting a preliminary injunction in a patent infringement case). And although In re SRJ Enterprises, Inc. uses the term “market share value” in describing a pre-petition asset of the debtor, the context of that case makes clear that the use of the term is inapposite to the situation here. In re SRJ Enters., Inc., 150 B.R. 933 (describing as “market share value” the pre-petition termination right in a Nissan franchise agreement).
The District Court found that the Appellants had not had their burdens increased by the Bankruptcy Court’s orders. Appellants have not challenged this finding on appeal.
Finally, we concur with the District Court that none of Hertz’ or Avis’ rights have been directly affected by the bankruptcy court’s rulings. The relevant language of the § 365(c) provides the following:
c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
(B) such party does not consent to such assumption or assignment;
11 U.S.C. § 365(c) (2002).
The language of § 365 makes it clear that the section is intended to protect the rights of the party to the assumed contract, not creditors in general, and certainly not persons asserting complaints solely based on their status as competitors. As we held in In re PWS Holding Corp., 228 F.3d at 248 (quoting Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988)):
Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself. Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan. In this context, the courts have been understandably skeptical of the litigant’s motives and have often denied standing as to any claim that asserts only third-party rights.
Because neither Avis nor Hertz is a party to the assumed concession agreements, their rights are not directly affected by the bankruptcy court’s ruling.
Appellants assert that if they are found to lack standing, they will have no other remedy to challenge the permissibility of the debtor’s consolidation of airport concessions. However, the fact that a third party is precluded from challenging terms of an agreement when that third party is neither a party to the agreement, nor an intended beneficiary of the agreement is unremarkable.
*917 We will, therefore, affirm the decision of the district court.