[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2002
THOMAS K. KAHN
CLERK

No. 01-14473

D. C. Docket Nos. 00-07616 CV-DMM
and 97-22293 BKC-PGH

IN RE:

WESTWOOD COMMUNITY TWO ASSOCIATION, INC.

Debtor,

_____

WESTWOOD COMMUNITY TWO ASSOCIATION, INC.,
Unofficial Ad Hoc Committee,

Plaintiff-Appellant,

versus

JOHN P. BARBEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 13, 2002)**

Before ANDERSON, DUBINA and MARCUS, Circuit Judges.

DUBINA, Circuit Judge:

This is an appeal from a district court's order[1] dismissing two appeals from a bankruptcy court for lack of standing. We reverse and remand.

I. BACKGROUND

The Westwood Community Two Association ("Debtor") is a not-for-profit homeowners' association located in Tarmac, Florida. All homeowners in the Westwood Community Two subdivision are members of the Debtor, which manages and maintains a clubhouse and swimming pool for use by its members.

In 1997, the Debtor filed a Chapter 7 voluntary bankruptcy petition. Peter Martin, John Lewis, and Mark and Linda Menzano ("Claimants") filed adversarial claims against the Debtor in the bankruptcy proceeding. The adversarial claims stemmed from a federal district court's prior determination that the Debtor had violated both the Federal and the Florida Fair Housing Acts. The district court found that the Debtor had discriminated against the Claimants on the basis of age, and thus entered judgment against the Debtor. Soon thereafter, the Debtor filed bankruptcy.

The Debtor's bankruptcy petition listed as its only assets several tables and a one-half interest in a pool table located in the leased clubhouse, valued at $200.

---

[1] *In re Westwood Community Two Assoc., Inc.*, 266 B.R. 223 (S.D. Fla. 2001).

2

The Debtor claimed that its liability for unsecured debts was $350,000. The bankruptcy court appointed John P. Barber as the Bankruptcy Trustee of the Debtor ("Trustee").

In the adversarial proceeding, the Trustee objected to the Claimants' request for compensatory damages, but did not object to the Claimants' request for punitive damages and attorney's fees. The bankruptcy court held an evidentiary hearing on all claims and subsequently decided to allow all of the claims. The claims consisted of general unsecured claims in the following amounts: (1) Peter Martin - $ 83,386.95 in compensatory damages and $ 150,000 in punitive damages; (2) John Lewis - $ 126,079.70 in compensatory damages and $ 250,000 in punitive damages; and (3) Mark and Linda Menzano - $ 112,372.57 in compensatory damages and $ 500,000 in punitive damages.

The Trustee filed a Motion for Reconsideration of these claims, which the bankruptcy court denied. The Trustee did not appeal the allowance of claims to the district court, despite the fact that the bankruptcy court imposed punitive damages. Instead, to pay these amounts in full, the Trustee assessed each homeowner $ 7,250 ("Special Assessment"), warning the homeowners that he would place a lien on their residences if they failed to pay the assessment. The Trustee claimed authority for this Special Assessment through the Debtor's governing documents.

3

When the Trustee began collecting the assessment, a group of homeowners filed a Notice of Appearance in the bankruptcy court, calling themselves the Unofficial Ad Hoc Committee for Westwood Community Two Association, Inc. ("Unofficial Committee"). About 100 homeowners formed this Unofficial Committee to challenge the Trustee's imposition of the Special Assessment. The Unofficial Committee filed an adversarial proceeding in the bankruptcy court, claiming that its members did not engage in the wrongful conduct that led to these claims, and therefore, the court should not allow the Trustee's Special Assessment. The bankruptcy court found that the Trustee did have the power to impose the Special Assessment under the Debtor's governing documents and allowed the Special Assessment ("Special Assessment Order"). The Unofficial Committee also filed a motion requesting that the bankruptcy court reconsider its allowance of the claims. The court denied that motion ("Reconsideration Order").

The Unofficial Committee appealed both the Reconsideration Order and the Special Assessment Order to the district court. The court consolidated the appeals, and the Trustee moved to dismiss the appeal, arguing that the Unofficial Committee lacked standing to appeal these orders because the Debtor was the real party in interest with standing to appeal. The district court agreed and dismissed the appeal. The Unofficial Committee timely appealed to this court.

## II. ISSUE PRESENTED

Whether the district court erred in finding that the Unofficial Committee lacked standing to appeal (i) a bankruptcy court order in which the bankruptcy court denied the Unofficial Committee's request to reconsider the bankruptcy court's prior allowance of claims, and (ii) a bankruptcy court order in which the bankruptcy court found that the Trustee had authority to impose an assessment under the Debtor's Articles of Incorporation, Declaration, and By-Laws.

## III. STANDARD OF REVIEW

This court reviews the district court's legal conclusions *de novo*. *In re Club Assoc.*, 951 F.2d 1223, 1228 (11th Cir. 1992).

## IV. DISCUSSION

Generally, only the bankruptcy trustee may appeal an order from a bankruptcy court. "This general rule was developed as a means to control, in an orderly manner, proceedings that often involve numerous creditors who are dissatisfied with any compromise that jeopardizes the full payment of their outstanding claims against the bankrupt." *In re Carbide Cutoff, Inc.*, 703 F.2d 259, 264 (7th Cir. 1983). Over time, courts have allowed exceptions to this rule "when the purposes of restricting the standing requirements are not apposite." *Id.*

5

Unlike the prior law, the Bankruptcy Reform Act of 1978 ("Bankruptcy Code") does not define who has standing to appeal an order of a bankruptcy court. In addition, neither the Supreme Court nor this court has defined who may appeal a bankruptcy order under the Bankruptcy Code. Our sister circuit's have agreed that, although Congress did not define who has standing to appeal in the Bankruptcy Code, no evidence exists that Congress intended to alter the definition set forth in the prior law, the Bankruptcy Act of 1898. *See Travelers Ins. Co. v. H.K. Porter Co.,* 45 F.3d 737, 741 (3d Cir. 1995); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 585 (7th Cir. 1994); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641-42 (2d Cir. 1988); *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987); *In re L.T. Ruth Coal Co.*, 803 F.2d 720 (6th Cir. 1986)(unpublished table opinion, No. 85-5990); *In re Fondiller*, 707 F.2d 441, 442-43 (9th Cir. 1983). This prior rule, commonly known as the "person aggrieved" doctrine, holds that only a person aggrieved has standing to appeal a bankruptcy court's order.[2] Since Congress passed the

---

[2] Former section 39(c) of the 1898 Bankruptcy Act provided:
A person aggrieved by an order of a referee may, within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors with respect thereto. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will

6

Bankruptcy Code, every circuit court to consider the issue of who may appeal a bankruptcy court's order has applied this person aggrieved standard as a prudential standing requirement. We agree with our sister circuits' reasoning and adopt this standard to determine whether an individual has standing to appeal a bankruptcy court's order.[3]

The person aggrieved doctrine is widely established in bankruptcy law. Our predecessor, the former Fifth Circuit,[4] defined "aggrieved" parties in the bankruptcy context as "those parties having a 'direct and substantial interest in the question' being appealed." *In re Odom,* 702 F.2d 962, 963 (11th Cir. 1983)(quoting *In re*

---

protect the rights of all parties in interest. A failure to file a petition for review of a referee's order within the prescribed 10 days after the entry of the order has generally been held, unless an extension is granted, to be fatal to the petition for review.
11 U.S.C. § 67(c) (1976)(repealed in 1978).

[3] Since Congress did not define who had standing to appeal an order in the Bankruptcy Reform Act of 1978, we recognize the person aggrieved doctrine as only a prudential prerequisite to standing. As the Ninth Circuit so aptly noted in *Fondiller*, this prudential limitation

> exists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.

707 F.2d at 443.

[4] In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), this court adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*First Colonial Corp. of Am.*, 544 F.2d 1291, 1296 (5th Cir. 1977)(superceded by statute on other grounds)). Bankruptcy's person aggrieved doctrine restricts standing more than Article III standing, as it allows a person to appeal only when they are "directly and adversely affected pecuniarily by the order." *In re Troutman Enter., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002)(citing *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996)). Courts have widely agreed that the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals who have a financial stake in the order being appealed. *Troutman*, 286 F.3d at 364; *see also Spenlinhauer v. O'Donnell*, 261 F.3d 113, 117-18 (1st Cir. 2001); *Travelers Ins. Co.,* 45 F.3d at 741; *Fondiller,* 707 F.2d at 442. A person has a financial stake in the order when that order "diminishes their property, increases their burdens or impairs their rights." *Troutman*, 286 F.3d at 364.

In this case, a review of the bankruptcy proceedings reveals that both orders "directly and adversely affect pecuniarily" the Unofficial Committee. Thus, we conclude the Unofficial Committee, as a person aggrieved, has standing to appeal both orders to the district court.

A. Reconsideration Order

In our view, the district court erred by applying a "real party in interest" standard to determine whether the Unofficial Committee had standing to appeal the

Reconsideration Order. While the court correctly noted that the Debtor is the real party in interest in this case, standing to appeal a bankruptcy order is not limited to a real party in interest.[5] Rather than focusing on the real party in interest, the proper inquiry is whether the party seeking to appeal is a person aggrieved by the bankruptcy court's order.

After reviewing the record, we conclude that the Unofficial Committee has standing to appeal the Reconsideration Order because it is a person aggrieved. This order, in which the bankruptcy court denied reconsidering the allowed claims, directly and adversely affects pecuniarily the Unofficial Committee because the Trustee assessed the Unofficial Committee's members to satisfy these claims. The Unofficial Committee's members each must pay thousands of dollars because the bankruptcy court allowed the claims. The Unofficial Committee, therefore, has standing to appeal the Reconsideration order.

Although the bankruptcy court allowed the Unofficial Committee to appear in the bankruptcy proceedings, that fact alone does not give the Unofficial

---

[5] The district court erred by applying our decision in *In re All Am. of Ashburn, Inc.*, 805 F.2d 1515 (11th Cir. 1986). In *Ashburn*, we concurred with the district court's finding that the bankruptcy court did not exceed its authority to protect the Debtor's estate when it enjoined a group of shareholders from pursuing a derivative action on behalf of the corporation. *Id.* at 1518. An important fact in *Ashburn* is that the shareholders sued on behalf of the corporation; the claim belonged to the corporation. *Id.* Because the claim belonged to the corporation and the trustee settled the claim, the bankruptcy court did not err in enjoining the derivative action. *Id. Ashburn*, unlike the present case, did not involve who had standing to appeal a bankruptcy court's order.

Committee standing to appeal an order of the bankruptcy court. *See In re*

*Thompson,* 965 F.2d 1136, 1141-42 (1st Cir. 1992)(stating "mere participation in a

hearing on the approval of a settlement or compromise in an adversary proceeding

does not constitute *de facto* intervention: [T]he fact that the appellants were given

an opportunity to be heard in the bankruptcy court does not provide a basis for

standing on appeal."). A person's standing to initially petition a bankruptcy court

to reconsider an order is provided by section 502(j) of the Bankruptcy Code.[6] "A

party in interest may move for reconsideration of an order allowing or disallowing a

claim against the estate." Fed. R. Bankr. P. 3008. Although no definition of "party

in interest" exists in Chapter 7 of the Bankruptcy Code, Chapter 11 defines a party

in interest as "the debtor, the trustee, a creditors' committee, an equity security

holders' committee, a creditor, an equity security holder, or any indenture trustee."

11 U.S.C. § 1109(b) (1978). Despite the fact that Chapter 7 does not define party in

___

[6] Section 502(j) provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502(j) (1978).

interest, the First Circuit recognized that the right for a party in interest to be heard in a bankruptcy proceeding, as set out in Chapter 11, also applies in a Chapter 7 case. *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 5 (1st Cir. 1999)(noting that "Chapter 7 includes no comparable provision, but in practice bankruptcy courts routinely entertain adversary proceedings against the Chapter 7 trustees. [citations omitted]. In light of the structure and purposes of the Bankruptcy Code, we agree with these courts that the right to be heard applies in the liquidation context."). We agree with the First Circuit that a party in interest has a right to be heard in a Chapter 7 bankruptcy proceeding. In this case, the Unofficial Committee, as a party in interest brought an adversary proceeding in the bankruptcy case and also moved the bankruptcy court to reconsider its allowance of claims. Under section 502(a) of the Bankruptcy Code, any claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a) (1978). The Unofficial Committee, as a party in interest, properly objected to these claims under section 502(j). The Unofficial Committee's appearance in the bankruptcy case, however, did not give it standing to appeal. Rather, as previously noted, the Unofficial Committee has standing to appeal because it was a person aggrieved by the order.

In sum, although the party in interest standard is pertinent to determine who may object to the allowance or disallowance of claims, the proper inquiry to

determine who may appeal a bankruptcy court order is the person aggrieved standard. In this case, the Unofficial Committee is a person aggrieved because the order denying the reconsideration of claims directly and adversely affects it pecuniarily. Thus, the Unofficial Committee had standing to appeal the bankruptcy court's order to the district court.

B. Special Assessment Order[7]

The Unofficial Committee is also a person aggrieved by the bankruptcy court's order that found that the Trustee had the authority to assess each homeowner to satisfy the bankruptcy claims. The bankruptcy court held that the Trustee, standing in the shoes of the Debtor, had the authority to impose a pro rata assessment of $7,250.00 on each homeowner to satisfy the allowed claims of the Debtor. This order, which upholds the assessment, directly and adversely affects the Unofficial Committee pecuniarily. Because the Unofficial Committee has a direct financial stake in this order, we conclude it has standing to appeal the bankruptcy court's special assessment order to the district court.

## V. CONCLUSION

---

[7] Although the district court never explicitly ruled on the Unofficial Committee's appeal of the Special Assessment Order, it closed the case and denied all pending motions as moot after discussing the merits of the assessment in its Order Granting Trustee's Motion To Dismiss Appeal and Closing Case. As the court ruled in the Order that the Unofficial Committee lacked "standing to appeal," we assume the court denied both appeals for lack of standing.

In conclusion, we hold that a person may appeal a bankruptcy court's order as a person aggrieved when that order directly, adversely, and pecuniarily affects the person.[8]  An order will directly, adversely, and pecuniarily affect a person if that order diminishes their property, increases their burdens, or impairs their rights.  In the present case, we hold that the Unofficial Committee has standing to appeal both bankruptcy court orders as a person auggrieved.  Accordingly, we reverse the district court's order dismissing two appeals from the bankruptcy court for lack of standing and remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[8] This holding is limited to defining a person aggrieved in this circuit, which is only one of many hurdles a person must overcome to have standing to appeal.  The Bankruptcy Code also contains certain procedural requirements, including attendance at bankruptcy hearings, intervention, and filing a notice of appeal within certain time limits.  These requirements are not disputed in this case and our holding in no way affects them.