**In re ATTORNEYS AT LAW AND DEBT RELIEF AGENCIES**

**Felicia S. Turner, United States Trustee, Appellant.**

**No. CV405–206.**

United States District Court, S.D. Georgia, Savannah Division.

Aug. 25, 2006.

B. Amon James, U.S. Trustee's Office, Savannah, GA, for Appellant.

### *ORDER*

WILLIAM T. MOORE, JR., Chief Judge.

This case is before the Court on appeal. Felicia S. Turner, United States Trustee for Region 21, ("the Trustee") appeals an order of Chief United States Bankruptcy Judge Lamar W. Davis, Jr., entered on October 17, 2005 ("the Order"). The Order interprets certain provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("the BAPCPA" or "the Act") that define and regulate "debt relief agencies." Judge Davis determined that these provisions do not apply to

attorneys and that attorneys admitted to practice before the Bankruptcy Court, with some limitations, need not comply with the Act's regulations. The Trustee appealed, arguing, in part, that the Bankruptcy Court lacked jurisdiction to enter the Order. On December 12, 2005, Leiden & Leiden filed a brief in support of the Order, asserting, in part, that the Trustee does not have proper standing to challenge the Order. After carefully reviewing the briefs in this case, and for the reasons set forth below, the Court agrees with Leiden & Leiden.

## BACKGROUND

On April 12, 2005, President George W. Bush signed the BAPCPA into law. The Act, in relevant part, imposes certain obligations on those entities it identifies as "debt relief agenc[ies]." 11 U.S.C. § 101(12A). Although the definition of a "debt relief agency" does not expressly reference attorneys, it includes entities which supply "bankruptcy assistance" to "assisted person[s]." *Id.* This sweeping language has not gone unnoticed by the academic and legal community. Scholars began scrutinizing the proposal in its infancy, and, by the time the BAPCA became effective, an ever-growing chorus of disapproval could be heard.[1]

On October 17, 2005, the day that the bulk of the BAPCPA's provisions were enacted, the Honorable Judge Lamar W. Davis, Jr., issued an order *sua sponte,* holding that certain provisions of the Bankruptcy Code regulating "debt relief agencies" do not apply to attorneys admitted to practice in the Southern District of Georgia, so long as their activities fall within the scope of the practice of law and do not constitute a separate commercial enterprise. The Bankruptcy Court posted the Order on its Internet website and later docketed it as Miscellaneous Proceeding No. 05–00400.

On November 3, 2005, the United States Trustee, unhappy with Judge Davis' preemptive strike against the new laws, filed the instant appeal and vaulted this Court into the BAPCPA rat's nest. Therein, she argues that the Bankruptcy Court lacked jurisdiction to enter the Order based on the absence of a "case or controversy" under Article III of the United States Constitution. She also maintains that the Bankruptcy Court lacked authority under Title 28 U.S.C. § 151 because there was no properly commenced "action, suit or proceeding" pending before the Bankruptcy Court.[2] For these reasons, the Trustee asks that this Court vacate the Order for lack of jurisdiction. Alternatively, she argues that this Court should reverse the Order on the merits.

On November 14, 2005, Terry P. Leiden filed an appearance as an interested party

---

**1.** Most relevantly, scholars have raged against the Act's potential application to attorneys practicing in bankruptcy courts. *See, e.g.,* Hon. Keith M. Ludin, *Ten Principles of BAPCPA: Not What Was Advertised,* 24 Am. Bankr. Inst. J. 1, 69 (Sept.2005)("BAPCPA de-professionalizes bankruptcy attorneys as 'debt relief agencies.' Sections 526, 527 and 528 require debt relief agencies to give notices and warnings that are not relevant in many of the circumstances in which they must be given, that will be false in some required contexts and that are just mean and scary for no obvious benefit.").

**2.** Title 28 U.S.C. § 151 states,

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

in this appeal on behalf of Leiden & Leiden, a professional corporation composed of four attorneys who purport to have a significant bankruptcy practice. Shortly after filing its initial notice, Leiden & Leiden filed a brief in support of the Order. Two local bankruptcy attorneys and the firm of Hunter, Maclean, Exley & Dunn, P.C. also filed a joint motion to intervene as Appellees. With leave of the Court, these attorneys responded to the Trustee's brief and registered their support of the Order. On February 3, 2006, the Trustee replied.

Though the parties' briefs were replete with jurisdictional and constitutional issues, the Court found that the parties had not adequately addressed an argument raised by Leiden & Leiden. Specifically, the firm contended that the Trustee did not have standing to contest the Bankruptcy Court's jurisdiction nor the Order's merit. The Court directed the parties to submit supplemental briefings on this issue. The parties have done so.

## ANALYSIS

### I. *Standard of Review*

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; *Bush v. Balfour Beatty Bahamas, Ltd.*, 62 F.3d 1319, 1322 (11th Cir.1995). Conclusions of law, however, are reviewed *de novo*. *Id.*

### II. *Standing*

Article III of the United States Constitution limits the power of federal courts to adjudicate actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The most significant case-or-controversy doctrine is the requirement of standing. *Nat'l Alliance for Mentally Ill, St. Johns. Inc. v. Bd. of County Comm'rs of St. Johns County*, 376 F.3d 1292, 1294 (11th Cir.2004). Decades ago, Justice Douglas aptly observed the complexity of this doctrine, stating that "generalizations about standing to sue are largely worthless as such." *See Ass'n. of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Nevertheless, several years later, the Supreme Court attempted to pinpoint the heart of the doctrine: "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

█ To answer that question, courts typically have said that, "at an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the [defendant's conduct], and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for the Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Many courts have endorsed further prudential limitations on standing in bankruptcy cases. The Eleventh Circuit, for example, has held that a person has standing to appeal an order of a bankruptcy court if she is a "person aggrieved" by the order. *In re Westwood Cmty. Two Assoc., Inc.*, 293 F.3d 1332, 1335 (11th Cir.2002).[3] "This requires that the person

---

3. The Eleventh Circuit is not alone in its endorsement of this particular limitation. *See e.g. Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 495 (3d Cir.1998); *In re Alpex Computer Corp.*, 71 F.3d 353, 357 n. 6 (10th Cir.1995); *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 n. 18 (5th Cir.1994); *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641–42 (2d Cir.1988); *In re El San Juan Hotel*, 809 F.2d

have 'a direct and substantial interest in the question being appealed,' and be 'directly and adversely affected pecuniarily by the order.'" *In re Henderson*, 2005 WL 1459398 (M.D.Fla.2005)(quoting *In re Westwood*, 293 F.3d at 1335). Put another way, an appellant must have a financial stake in the order being appealed, such that the order diminishes her property, increases her burden or impairs her rights. *In re Westwood*, 293 F.3d at 1335 (citations omitted).

■ The person aggrieved test is more restrictive than traditional Article III standing, which need not involve financial injury. *Id.; In re Alpex*, 71 F.3d at 357 n. 6. "The rationale for such a strict requirement is that bankruptcy litigation almost always involves the interests of numerous parties who may or may not be parties to the litigation. Restricting standing to those who have a direct pecuniary interest in the litigation avoids endless appeals brought by individuals affected only indirectly by the bankruptcy court's orders." *Lynch v. Ca. Pub. Utils. Comm'n*, 311 B.R. 798 (N.D.Ca.2004)(reversed on other grounds); *accord In re Westwood*, 293 F.3d at 1335 n. 3.

■ The only exception to the standard for standing to appeal is for the United States Trustee who may appeal an order of the bankruptcy court on behalf of the "public interest," even though his pecuniary interests are not affected. *In re Urban Broadcasting Corp.*, 304 B.R. 263, 269 n. 10 (E.D.Va.2004)(citing *In re Clark*, 927 F.2d 793, 796 (4th Cir.1991); 1 Collier on Bankruptcy ¶ 5.06). This exception stems from the Supreme Court's opinion in *Securities & Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). In that case, the Supreme Court held that standing to appeal under the Bankruptcy Act as a "party aggrieved" may arise from a party's official duty to enforce the bankruptcy law in the public interest. More specifically, the High Court found standing by the SEC to appeal an adverse bankruptcy court ruling affecting such a public interest. *Securities & Exchange*, 310 U.S. at 460, 60 S.Ct. at 1055. More recently, the Fourth and Sixth Circuits have upheld a trustee's standing where a bankruptcy court's ruling has interfered with her ability to enforce a bankruptcy law. *In re Clark*, 927 F.2d at 796; *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir.1990).

■ Here, the Trustee argues that the public interest exception confers upon her the standing to bring the instant appeal. In a normal case or proceeding, a Trustee's standing is self-evident. The power Congress granted to United States Trustees is undeniably broad. Specifically, Congress allowed that "the United States Trustee may raise and be heard on *any* issue in *any* case or proceeding under this title . . . ." 11 U.S.C. § 307 (emphasis added). That right, however, is not unconditional. Congress has not imbued United States Trustees with the power to appear in court whenever bankruptcy law is discussed. Rather, it provided them with the authority to appear and act in *cases* and *proceedings. Id.*

■ Though the Bankruptcy Code itself is silent as to the precise definition of "case" or "proceeding," the terms are described in the sections proceeding the Code in the *Bankruptcy Code and Rules* 2006 version, edited by the Honorable William L. Norton, Jr. and William L. Norton, III. Specifically, Section V of the preamble notes that case and proceeding "are not synonymous or interchangeable terms." A

151, 154 (1st Cir.1987); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir.1983).

"case" refers to a matter initiated by the filing of a petition seeking relief under the Bankruptcy Code. A "proceeding" refers to everything which happens within the context of a bankruptcy case.[4] No petition was filed initiating this matter. Additionally, no "case" or "proceeding" was in existence at the bankruptcy court level, nor was one created with the issuance of Judge Davis' Order.

■ Thus, though Congress has provided the Trustee with broad authority, it has not authorized her to advance this peculiar

appeal. Accordingly, the Court finds that the Trustee lacks standing to prosecute this appeal.[5] This appeal is, therefore, **DISMISSED**, and the Clerk is **DIRECTED** to **CLOSE** this matter. All pending motions are **DENIED** as moot.

4. Other sources offer similar definitions of these terms. For example, "one recognized authority on bankruptcy 'case' as 'the umbrella under which all of the proceedings which follow the filing of a bankruptcy petition take place.'" *In re Bruno's, Inc.*, 227 B.R. 311, 321 (Bankr.N.D.Ala.1998)(quoting 1 Collier on Bankruptcy ¶ 3.01[3] (Matthew Bender 15th ed. rev.1996)).

5. The Trustee advances several arguments in support of her contention that the lack of a case or proceeding does not negate her standing in this case. The Court does not find these arguments persuasive. Most notably, she suggests that the absence of a case or proceeding mandates the Order's vacation as bankruptcy courts exercise jurisdiction only over bankruptcy cases and proceedings. This is not the case. Put simply, the Trustee is placing the cart before the horse. Before a district court can entertain arguments regarding a bankruptcy court's jurisdiction to enter an order, it must determine whether the appellant has standing to bring the appeal. *See, e.g., CAMP Legal Def. Fund, Inc. v. City of Atl.*, 451 F.3d 1257, 1269 (11th Cir.2006).