[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12921
Non-Argument Calendar
_____

D.C. Docket Nos. 2:11-cv-00058-LGW; 07-bkc-20244-JSD

IN RE: MARVIN B. SMITH, III,
        SHARON H. SMITH,

                                                                            Debtors.

_____

MARVIN B. SMITH, III,
SHARON H. SMITH,

                                                                    Plaintiffs-Appellants,

versus

ATLANTIC SOUTHERN BANK AND
SAPELO SOUTHERN BANK,
FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Atlantic Southern Bank,

                                                                    Defendants - Appellees.
_____

No. 12-12973
Non-Argument Calendar
_____

D.C. Docket Nos.  2:11-cv-00057-LGW; 07-bkc-20244

IN RE: MARVIN B. SMITH, III,
        SHARON H. SMITH,

                                                                    Debtors.

_____

MARVIN B. SMITH, III,
SHARON H. SMITH,

                                                        Plaintiffs-Appellants,

versus

ATLANTIC SOUTHERN BANK,
FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Atlantic Southern Bank,

                                                        Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(June 28, 2013)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Marvin and Sharon Smith (collectively "the Smiths"), proceeding *pro se*, appeal the district court's affirmances of the bankruptcy court's dismissal with prejudice of the Smiths' adversary proceeding and denial of their motion to reconsider the allowance of a creditor's claims, 28 U.S.C. § 158(a). For the reasons set forth below, we affirm.

2

I.

In 2007, the Smiths filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. "Sapelo Southern Bank"[1] subsequently filed two proof-of-claim forms, claiming that it had extended loans to the Smiths that were secured by their real property. Atlantic Southern Bank ("Atlantic Southern")[2] then filed an amended motion for relief from the automatic bankruptcy stay. In its motion, Atlantic Southern asserted that it held two promissory notes, both of which were secured by the Smiths' real property. Attached to Atlantic Southern's motion were a promissory note between United Community Bank and the Smiths ("the promissory note"), and a deed to secure the debt evidenced by the promissory note. The deed provided that the Smiths agreed that their cottage located in Sea Island, Georgia, would be the collateral securing the debt.

The court conditionally denied Atlantic Southern's motion for relief from the stay, but indicated that the motion would be automatically granted if the Smiths failed to make specific court-ordered payments to Atlantic Southern. In May 2008, Atlantic Southern's motion for relief from the stay was automatically granted when

---

[1] It was later revealed that "Sapelo Southern Bank" was a trade name for Atlantic Southern Bank.

[2] In May 2011, Atlantic Southern was closed by the Georgia Department of Finance, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Atlantic Southern. The FDIC has been serving as the receiver of Atlantic Southern since that time.

the Smiths failed to make the required payments.  That same month, the

bankruptcy court converted the Smiths' Chapter 11 bankruptcy into a Chapter 7

bankruptcy.  Atlantic Southern foreclosed on the Smiths' cottage.

In July 2009, the Smiths moved to vacate the court's order that resulted in

Atlantic Southern obtaining relief from the stay ("2009 motion to vacate").  The

Smiths argued, *inter alia*, that Atlantic Southern had no standing in the bankruptcy

case and never had an interest in the Smiths' cottage.  The Smiths asserted that

United Community Bank had not properly assigned its rights under the promissory

note and the deed to secure debt to Atlantic Southern.  According to the Smiths, the

bankruptcy court's order that resulted in Atlantic Southern obtaining relief from

the stay was void because Atlantic Southern had no standing in the bankruptcy

case.  The Smiths requested damages and other relief due to Atlantic Southern

allegedly violating the automatic bankruptcy stay.

The Smiths attached to their motion an email from J. Randall Griffin, a

Senior Vice President of Atlantic Southern, addressed to the Smiths.  The email

provided that Atlantic Southern had recently discovered that United Community

Bank had assigned its interest in the cottage to "Sapelo Southern Bank," which was

a trade name for Atlantic Southern.  Because the assignment was to "Sapelo

Southern Bank," the foreclosure on the cottage was not proper.  Griffin told the

Smiths that they could either sign a quitclaim deed assigning their interest in the

4

cottage to Atlantic Southern, or Atlantic Southern could go through the foreclosure process a second time. The Smiths decided to sign a quitclaim deed assigning their interest in the cottage to Atlantic Southern.

The bankruptcy court determined that the Smiths were requesting damages in their 2009 motion to vacate, based on their allegation that Atlantic Southern had violated the automatic stay. The court determined that the Smiths' request had to be adjudicated in an adversary proceeding. An adversary proceeding was opened, and the Smiths' 2009 motion to vacate was designated as a complaint.

In response to the court's order, the Smiths asserted that their motion should be heard as a contested matter, rather than in an adversary proceeding, and that they no longer sought monetary damages. The Smiths requested that the court find void the quitclaim deed that they had signed. The bankruptcy court determined that the Smiths' claims still had to be addressed in an adversary proceeding because the Smiths now sought to determine whether Atlantic Southern had an interest in the cottage.

A summons was issued three times in the adversary proceeding, but the Smiths failed to serve Atlantic Southern with the summons, despite the court ordering the Smiths to do so. The Smiths also appealed various orders of the bankruptcy court to the district court, and the appeals were dismissed as frivolous. Atlantic Southern filed a motion to dismiss with prejudice the adversary

5

proceeding. It asserted that the summons had never been served, despite the summons being issued 3 times over the prior 18 months. Atlantic Southern further asserted that the failure to serve the summons prejudiced it, as it had been forced to defend against the Smiths' numerous pleadings filed in the bankruptcy case, adversary proceeding, and appeals to the district court.

The bankruptcy court granted Atlantic Southern's motion to dismiss the adversary proceeding with prejudice because the Smiths had failed to prosecute the adversary proceeding and had not followed the court's orders. The court determined that dismissal with prejudice under Fed.R.Civ.P. 41(b) was required to allow the court to manage its docket, enforce its orders, and effectuate prompt resolution of the litigation. The Smiths appealed the dismissal to the district court.

In January 2011, the Smiths filed in the bankruptcy court a "Motion to Reconsider Claims of Atlantic Southern Bank" ("2011 motion to reconsider"). "Sapelo Southern Bank" was named as a party to the motion. The Smiths argued that Atlantic Southern's motion for relief from the stay was an "amendment" to the proof of claims filed by "Sapelo Southern Bank." The Smiths asserted that the claims of Atlantic Southern were improperly "allowed" in the court's order that resulted in Atlantic Southern obtaining relief from the stay because it had no interest in the cottage, as it had failed to prove any interest with documentary

6

evidence. The Smiths also argued that Atlantic Southern's claims should be disallowed because it did not have standing in the bankruptcy case.

Atlantic Southern filed a motion to dismiss the Smiths' 2011 motion to reconsider and asserted that the Smiths' motion dealt with the same facts at issue in the adversary proceeding. The bankruptcy court dismissed the Smiths' 2011 motion on *res judicata* grounds, as the claims in the motion to reconsider could have been litigated in the adversary proceeding, and all of the requirements for the doctrine's application were satisfied. The Smiths appealed the dismissal to the district court.

With respect to the Smiths' appeal of the bankruptcy court's order dismissing with prejudice the adversary proceeding, the district court agreed with the bankruptcy court's decision that dismissal with prejudice of the adversary proceeding was warranted, in light of the Smiths' actions. Thus, the district court affirmed the bankruptcy court's order dismissing with prejudice the adversary proceeding. With respect to the Smiths' appeal of the bankruptcy court's order dismissing their 2011 motion to reconsider, the district court affirmed the bankruptcy court's order dismissing the Smiths' motion to reconsider because the motion was barred by the doctrine of *res judicata*, as all requirements for the doctrine's application were satisfied.

II.

7

On appeal, the Smiths argue that Atlantic Southern lacked standing to move for relief from the automatic bankruptcy stay and to move to dismiss the adversary proceeding with prejudice because Atlantic Southern failed to show that it had any rights under the promissory note or an interest in the cottage.  Because Atlantic Southern had no standing in the bankruptcy case, the bankruptcy court lacked jurisdiction to grant Atlantic Southern's motions, and thus, the court's orders granting any such motions are void.  The Smiths cite several cases for the proposition that Atlantic Southern has the burden of establishing its security interest in the cottage and has the burden of showing that it is the holder of the promissory note.  The Smiths argue that they can raise a jurisdictional defect at any time and that we have an obligation to address jurisdictional issues *sua sponte*.

We review conclusions of law made by either the district court or the bankruptcy court *de novo*.  *Ala. Dep't of Econ. & Cmty. Affairs v. Lett (In re Lett),* 632 F.3d 1216, 1225 (11th Cir. 2011).  We also review questions of jurisdiction, including standing, *de novo*.  *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010).  We review a court's decision to dismiss a case for failure to comply with the rules of the court for an abuse of discretion.  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).  Although we interpret briefs filed by *pro se* litigants liberally, arguments not raised in a *pro se* brief are abandoned.  *Timson v.*

8

*Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief.  *Id.*

Article III standing arises from the Constitution's requirement that federal courts only have jurisdiction over cases and controversies.  *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990).  Parties in federal court must have a "personal stake" in the outcome of a case.  *Id.* (quotation omitted).  In general, Article III standing is determined as of the time at which the litigant's complaint is filed.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003).  The party invoking federal jurisdiction bears the burden of proving standing.  *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011).  We examine the allegations of a complaint to determine whether a particular litigant is entitled to an adjudication of the particular claims asserted.  *Id.*

To have statutory standing in a bankruptcy proceeding, a party must be a "party in interest."  *Walden v. Walker (In re Walker)*, 515 F.3d 1204, 1212 (11th Cir. 2008).  Chapter 11 provides that a "party in interest" is, *inter alia*, a debtor or a creditor and that a "party in interest" may raise and be heard on any issue in a bankruptcy case.  *See* 11 U.S.C. § 1109(b).  Chapter 7 does not specifically define a "party in interest."  *See Westwood Cmty. Two Ass'n, Inc. v. Barbee (In re Westwood Cmty. Two Ass'n, Inc.)*, 293 F.3d 1332, 1336 (11th Cir. 2002).  Despite

9

the fact that Chapter 7 does not define the term "party in interest," the right for a party in interest to be heard in a bankruptcy proceeding, as set out in Chapter 11, also applies in a Chapter 7 case. *Id.* According to the Bankruptcy Code, a "creditor" includes an "entity that has a claim against the debtor." 11 U.S.C. § 101(10)(A). A "claim" is a "right to payment," whether disputed or undisputed, secured or unsecured, or liquidated or unliquidated. *Id.* § 101(5)(A).

A bankruptcy "case" is comprised of those matters that can be decided on short notice, referred to as "contested matters," and those matters that can only be decided in a proceeding similar to a full civil lawsuit, referred to as "adversary proceeding." 1-1 Collier on Bankruptcy ¶ 1.01 (16th ed. 2013). Thus, an adversary proceeding is part of the original bankruptcy case. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451-52, 124 S.Ct. 1905, 1913, 158 L.Ed.2d 764 (2004). However, adversary proceedings are commenced by the filing of a complaint with the court and require service of a summons and complaint. *Id.* at 452, 124 S.Ct. at 1913; Fed.R.Bankr.P. 7003, 7004; Fed.R.Civ.P. 3. Adversary proceedings are required with respect to various matters, including determining the validity, priority, or extent of a lien or other interest in property. Fed.R.Bankr.P. 7001(2).

As an initial matter, we note that the Smiths have abandoned any argument that the bankruptcy court improperly determined that an adversary proceeding was

10

necessary to resolve the matters raised in the Smiths' 2009 motion to vacate, as they do not raise any such argument in their initial brief. *See Timson*, 518 F.3d at 874.   The Smiths instead argue that Atlantic Southern lacked standing to be heard on any matter in the bankruptcy case and that any order granting a motion of Atlantic Southern was void.  However, as discussed below, Atlantic Southern had standing in the bankruptcy case at the time it filed its motion for relief from the automatic stay.

Atlantic Southern had constitutional standing because its allegations in its motion—that it was a secured creditor and that its interest in the cottage was not adequately protected—demonstrated that it had a "tangible financial interest" in getting the Smiths' cottage out from under the jurisdiction of the bankruptcy court so that it could foreclose on the property, and that interest was sufficient to confer Article III standing.  *See In re James Wilson Assocs.*, 965 F.2d 160, 168, (7th Cir. 1992) (persuasive authority providing that a secured creditor "dragged into a bankruptcy proceeding against his will by the automatic stay provision of the Bankruptcy Code has a tangible financial interest in getting his security out from under the jurisdiction of the bankruptcy court so that he can foreclose it . . . .  That is interest enough to confer standing in an Article III sense").  Atlantic Southern also had statutory standing because it alleged that it had a secured claim to payment, such that it was a creditor, as defined by the Bankruptcy Code.  *See* 11

11

U.S.C. § 101(5)(A), (10)(A).  Because it was a creditor, it was a party in interest in the bankruptcy case.  *See id.* § 1109(b).   Although the Smiths challenge Atlantic Southern's standing in the adversary proceeding, its standing in that proceeding is not at issue, as the Smiths were the parties seeking to invoke the bankruptcy court's jurisdiction over the proceeding.  *See Hollywood Mobile Estates Ltd.*, 641 F.3d at 1265.

Although the Smiths also raise arguments on appeal concerning the merits of their complaint in the adversary proceeding, we do not address these arguments because the Smiths' complaint was dismissed before the bankruptcy court addressed its merits.  The Smiths have abandoned any other challenge to the bankruptcy court's determination, that the complaint in the adversary proceeding should be dismissed with prejudice, by not raising these challenges in their appellate briefs.  *See Timson*, 518 F.3d at 874.  Accordingly, we affirm the district court's affirmance of the bankruptcy court's dismissal with prejudice of the adversary proceeding.

## III.

The Smiths argue that the bankruptcy court should not have dismissed their 2011 motion to reconsider the claims of Atlantic Southern as barred by the doctrine of *res judicata* because not all of the elements for the doctrine's applicability were satisfied.  The Smiths assert that the bankruptcy court lacked subject matter

12

jurisdiction to dismiss their motion for the reasons set forth in the section of their brief addressing the dismissal with prejudice of the adversary proceeding. Next, they assert that "Sapelo Southern Bank" and Atlantic Southern were parties to their motion to reconsider, whereas only Atlantic Southern was a party to the adversary proceeding. The Smiths further assert that the cause of action at issue in the adversary proceeding differed from the cause of action at issue in their motion to reconsider. In support of this argument, the Smiths assert that their motion to reconsider Atlantic Southern's claims raised issues related to (1) a hearing in December 2010, where Griffin testified that "Sapelo Southern Bank" sold an interest in the promissory note to South Georgia Bank prior to the Smiths' bankruptcy petition being filed, (2) the bankruptcy court's order disallowing the proof of claims of "Sapelo Southern Bank," and (3) Atlantic Southern's amendments to the proof of claims of "Sapelo Southern Bank." The Smiths further argue that fraud was involved in the bankruptcy case, such that their claims cannot be barred by *res judicata*, but they do not specify the facts underlying their allegation of fraud.

We review *de novo* a bankruptcy court's application of *res judicata*. *Kaiser Aerospace and Elecs. Corp. & PAQ, Inc. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1295 (11th Cir. 2001). Under *res judicata*, a final judgment on the merits bars the parties to a prior action from re-litigating a cause

13

of action that was or could have been raised in that action. *Id.* at 1296. *Res judicata* bars a claim in a prior case if: (1) there was a final judgment on the merits rendered by a court that had jurisdiction; (2) the cases involved the same parties or those in privity with them; and (3) the same cause of action is involved in both cases. *Id.* In order to determine whether the two proceedings are based on the same cause of action, the test is whether they arise out of the same nucleus of operative fact, or are based upon the same factual predicate. *Id.* at 1297.

Here, the doctrine of *res judicata* barred the Smiths from re-litigating their claims in the adversary proceeding by way of their 2011 motion to reconsider the claims of Atlantic Southern. First, the Smiths' argument—that the bankruptcy court lacked jurisdiction to grant Atlantic Southern's motion to dismiss with prejudice the adversary proceeding because Atlantic Southern lacked standing in the bankruptcy case—is without merit for the reasons discussed above. Next, the bankruptcy court had subject matter jurisdiction to enter a final decision in the adversary proceeding, pursuant to 28 U.S.C. § 157(b)(1), which provides that bankruptcy courts have jurisdiction to enter final orders and judgments in core proceedings. *See* 28 U.S.C. § 157(b)(1). Core proceedings include matters concerning (1) the allowance or disallowance of claims against the estate; (2) determinations of the validity, extent, or priority of liens; and (3) motions to terminate the automatic stay. *See id.* § 157(b)(2)(B), (b)(2)(G), (b)(2)(K). As the

14

adversary proceeding only raised "core" matters, the bankruptcy court had subject matter jurisdiction to enter a final decision in the adversary proceeding. Next, the Smiths argue that the parties in the adversary proceeding were not identical to the parties to their motion to reconsider because "Sapelo Southern Bank" was not a party to the adversary proceeding. However, the Smiths stipulated in the bankruptcy case that "Sapelo Southern Bank" was a trade name for Atlantic Southern. Thus, the Smiths have not shown that the parties to the adversary proceeding differed from the parties to the 2011 motion to reconsider.

The Smiths also have not shown that the adversary proceeding involved a different cause of action than the motion to reconsider. Both the adversary proceeding and the motion to reconsider concerned whether Atlantic Southern had a claim in the bankruptcy case, and whether it had a lien on the Smiths' property. Thus, both cases involved the facts relating to (1) the assignment of the promissory note and the deed to secure debt, and (2) the circumstances concerning the quitclaim deed. That the bankruptcy court disallowed the claims of "Sapelo Southern Bank" while the adversary proceeding was pending and that South Georgia Bank may also have had an interest in the Smiths' cottage does not show that the adversary proceeding involved a different factual predicate than the motion to reconsider. The Smiths' assertion on appeal—that their 2011 motion to reconsider relied on facts concerning Atlantic Southern's "amendments" to the

proof of claims of "Sapelo Southern Bank"—appears to refer to the Smiths' claim in their motion that Atlantic Southern improperly "amended" the proof of claims of "Sapelo Southern Bank" when it moved for relief from the stay. This claim relies on the same facts as the adversary proceeding, that is, the facts necessary for determining whether Atlantic Southern had a claim in the bankruptcy case or an interest in the Smiths' property. Thus, the Smiths have not shown that the adversary proceeding involved a different cause of action than the motion to reconsider.

The Smiths assert that fraud was involved in the bankruptcy case, such that their claims in their 2011 motion to reconsider cannot be barred by *res judicata*. In the bankruptcy proceeding, they argued that Atlantic Southern acted fraudulently by failing to disclose to the bankruptcy court the documents relating to the assignment of the promissory note and the deed to secure debt when Atlantic Southern moved for relief from the automatic stay. However, the record does not contain any facts showing that Atlantic Southern intentionally concealed the assignment documents, as the Smiths were able to file the assignment documents in the bankruptcy case, and Atlantic Southern informed the Smiths of the defect concerning the assignment of the deed to secure debt when it discovered the defect. Thus, we reject the Smiths' argument that the bankruptcy court erred in dismissing their motion to reconsider because fraud was involved in the case. Accordingly,

16

we affirm the district court's affirmance of the bankruptcy court's determination that the Smiths' 2011 motion to reconsider was barred by *res judicata*.

IV.

For the foregoing reasons, we affirm the district court's affirmances of the bankruptcy court's dismissal with prejudice of the Smiths' adversary proceeding and the denial of their motion to reconsider the allowance of Atlantic Southern's claims.

**AFFIRMED.**

17