[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12536
_____

D.C. Docket No. 1:18-cv-00357-RWS,
Bkcy No. 15-bkc-58440-WLH

In Re: BAY CIRCLE PROPERTIES, LLC,

Debtor.
_____

CHITTRANJAN THAKKAR,

Plaintiff-Appellant,

DCT SYSTEMS GROUP, LLC,

Plaintiff,

versus

BAY POINT CAPITAL PARTNERS, LP,
BAY POINT ADVISORS, LLC,
CHARLES ANDROS,
JOHN DOE, 1,
JOHN DOE, 2,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 8, 2020)

Before WILSON, BRANCH, and JULIE CARNES, Circuit Judges.

WILSON, Circuit Judge:

Initially, when co-plaintiffs Chittranjan Thakkar and DCT Systems Group, LLC (DCT) jointly appealed to this court, we had no reason to doubt our jurisdiction. But then, after briefing, DCT settled and dismissed its appeal, leaving Thakkar as the sole appellant. DCT's exit created a jurisdictional problem— Thakkar, an individual without injury, lacks standing. We thus dismiss Thakkar's appeal.

I.

Thakkar claims to be "affiliated with" DCT. Thakkar and DCT each had loans with Wells Fargo. When DCT declared bankruptcy, Thakkar, DCT, and Wells Fargo entered into a Settlement Agreement for debt owed on the loans, securing them with two properties DCT owned and to which Thakkar asserted a "beneficial interest."[1] Thakkar alleges the properties were worth at least $8 million together. The Agreement included a deeds-in-lieu-of-foreclosure remedy for Wells

_____

[1] For simplicity's sake, we omit reference to other entities involved in the bankruptcy case and attendant agreements.

Fargo: upon default, "Lender may at any time and in its discretion, without further notice to any Obligor or any other Person, record one or more of the Deeds in Lieu to effectuate a transfer of title to one or more Parcels of the Encumbered Property."

Wells Fargo sold its interest in the Agreement to Bay Point, and DCT ultimately defaulted on the loans. Thakkar alleges that, upon default, DCT owed $2.7 million on the debt, and Bay Point chose to record the properties' deeds. Thakkar alleges that recording one deed would have satisfied the debt. The bankruptcy court overseeing DCT's bankruptcy authorized Bay Point "to exercise (in Bay Point's sole discretion) any and all rights and remedies," including foreclosure, and Bay Point pursued foreclosure on both properties.

Two days before the foreclosure sale, counsel for DCT purported to tender payment of the remaining debt to Bay Point, stating over email, "I can confirm to you that the sum of [$2.8 million] is in escrow to be tendered on behalf of DCT and such sum [can] be remitted to Bay Point upon receipt of written acknowledgment that it will accept this tender." Bay Point did not respond. At the sale, Thakkar appeared and read the email letter aloud, but he did not produce payment. Bay Point sold the properties for $2.85 million.

Thakkar sued Bay Point in state court and added DCT as a plaintiff in an amended complaint. In the amended complaint, Thakkar alleges that Bay Point's

3

foreclosure of two properties caused him to lose the collateral's value exceeding the debt balance, and to suffer mental anguish.

Bay Point removed to bankruptcy court and moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the court granted and entered for Bay Point. The district court affirmed the bankruptcy court in all respects. Thakkar and DCT appealed. On July 24, 2019, we granted DCT's motion to dismiss its appeal, following a settlement with Bay Point where DCT relinquished all claims regarding the two properties it owned. Now Thakkar alone challenges Bay Point's decision to record both properties' deeds instead of one and Bay Point's failure to accept the purportedly proper "tender."

## II.

Article III standing "represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). We analyze three elements for Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The first of these is injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted) (citations omitted). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1.

At the pleading stage, "plaintiff[s] must clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016) (alteration adopted) (internal quotation marks omitted). "[L]abels," "conclusions," or "naked assertions devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Important too is that "standing is not dispensed in gross." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. ___, 137 S. Ct. 1645, 1650 (2017). An appellate court must examine its jurisdiction if the sole party with standing in the lower court is absent as an appellant. *See Diamond v. Charles*, 476 U.S. 54, 61 (1986). The ability of a party without its own standing to "piggyback" on another party's standing "exists only if the [party with standing] is in fact an appellant . . . ; in the absence of the [party with standing] in that capacity, there is no case." *Id.* at 64.

To start, DCT undoubtedly had standing, but now its "absence as an appellant requires that we examine our jurisdiction to entertain this appeal." *See id.* at 61. Thakkar can no longer piggyback on DCT's standing because DCT relinquished all claims to the properties in its settlement with Bay Point. He must

have sufficiently alleged facts in the operative complaint to establish his own standing independent of any interest in DCT.

He did not.  Thakkar failed to allege an actual injury personal to him.  In the operative complaint, Thakkar alleges that Bay Point's foreclosure on DCT's two properties caused *him* to lose the collateral's value exceeding the debt balance, and to suffer mental anguish.  But he also alleges that *DCT*—not he—was the properties' owner, and he otherwise fails to elaborate on the nature of his "beneficial interest" in DCT and its properties.  Without more, we cannot say that any alleged loss Thakkar suffered as an individual is more than speculative.  His "naked assertions devoid of further factual enhancement" will not suffice.  *See Iqbal*, 556 U.S. at 678 (alteration adopted) (internal quotation marks omitted).

As for mental anguish, Thakkar asserted that, "[i]n a wrongful foreclosure action, an injured party may seek damages for mental anguish in addition to cancellation of the foreclosure," quoting *Blanton v. Duru*, 543 S.E.2d 448, 452 (Ga. Ct. App. 2000).  But, unlike the injured party in *Blanton*, Thakkar has not demonstrated that he owned the foreclosed properties here.  *See id.* at 449–50.  On the contrary, he alleges DCT owned them.  *Blanton* did not hold that a nonowner may seek damages for mental anguish, so *Blanton* does not benefit Thakkar.

To the extent Thakkar asserts other injuries, none amount to an injury in fact.  He asserts on appeal that (1) he personally guaranteed the loans at issue; and

(2) the property could satisfy or decrease his personal liability stemming from judgments that two creditors have against him individually.  First, the foreclosures satisfied the Settlement Agreement debt, so even assuming that he truly did personally guarantee the loans, it is unclear why any personal guaranty matters.  And more importantly, we see no reference in his complaint to such a personal guaranty.  Second, it is unclear how DCT's recovery of any lost property value would pay off Thakkar's alleged personal liability on creditors' judgments against him individually; he is neither a debtor nor creditor in the original bankruptcy proceedings.  Indeed, in his supplemental brief, he says that he *or* the bankruptcy estate could get the property, and he offers no basis for concluding that the property would likely become his.  And, anyway, the complaint contained no allegations about Thakkar's personal liability to these two creditors.  All in all, because Thakkar failed to allege a particularized, actual injury for Article III standing, we have no jurisdiction over this appeal.

## III.

Beyond Article III standing, "we have adopted the person aggrieved doctrine as our standard for determining whether a party can appeal a bankruptcy court's order." *Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.)*, 764 F.3d 1321, 1325 (11th Cir. 2014).  That "standard does not speak to a court's subject-matter jurisdiction.  Rather, it tells us which parties may appeal from a bankruptcy

7

court order." *Id.* at 1325 n.3.  The "doctrine restricts standing more than Article III standing." *Heatherwood Holdings, LLC v. HGC, Inc. (In re Heatherwood Holdings, LLC)*, 746 F.3d 1206, 1216 (11th Cir. 2014).  It "limits the right to appeal a bankruptcy court order to those parties having a direct and substantial interest in the question being appealed," i.e., those whom a bankruptcy court's order "directly, adversely, and pecuniarily" affects by "diminish[ing] their property, increas[ing] their burdens, or impair[ing] their rights." *Ernie Haire Ford*, 764 F.3d at 1325 (internal quotation mark omitted).

Based on that doctrine, we also dismiss this appeal because Thakkar certainly cannot clear the higher hurdle of showing that he is a person aggrieved. Assuming the bankruptcy-court order injured Thakkar at all, it did so indirectly because the order affected DCT's pecuniary interest, not Thakkar's. *See LorCon LLC # 1 v. Heyl (In re Heyl)*, 770 F.3d 729, 729–31 (8th Cir. 2014) (per curiam) (holding an individual did not have person-aggrieved standing because he had no more than a derivative interest in his company's claim).  He fails to allege a direct and substantial interest in the question being appealed or explain how the order diminishes his—rather than DCT's—property, increases his burdens, or impairs his rights.  *See Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366–67 (5th Cir. 2015) (holding entity had no person-aggrieved standing because it "did not show that it would have accessed any funds from the bankruptcy estate had the

court not approved" a sale, and the contested order "left [the entity] in the same position").

Thakkar argues that he has person-aggrieved standing to appeal the bankruptcy-court order because the order will ultimately cause him financial loss akin to the loss suffered by homeowners in *Westwood Community Two Association, Inc. v. Barbee (In re Westwood Community Two Association, Inc.)*, 293 F.3d 1332 (11th Cir. 2002). However, *Westwood* is distinguishable. There, the trustee for a debtor homeowners' association imposed a special assessment on the homeowners to cover the cost of claims against the association in its bankruptcy proceeding. *Id.* at 1333–34. The homeowners appealed two bankruptcy-court orders: (1) an order denying their request to reconsider allowance of the claims against the debtor homeowners' association; and (2) an order allowing the special assessment. *Id.* at 1334. We held that, under the proper person-aggrieved standard, the homeowners had standing to challenge both orders because, in short, the orders directly permitted the special assessment that cost each homeowner thousands of dollars. *Id.* at 1336–37. Thakkar alleged no equivalent to the *Westwood* special assessment—no "direct financial stake" in the bankruptcy order at issue in this case. *See id.* at 1337. Therefore, Thakkar has not shown person-aggrieved standing under *Westwood*.

Finally, to the extent Thakkar argues that he is a person aggrieved simply by virtue of attacking the inherent fairness of a bankruptcy proceeding, citing *Ernie Haire Ford* and *Kabro Associates of West Islip, LLC v. Colony Hill Associates (In re Colony Hill Associates)*, 111 F.3d 269 (2d Cir. 1997), he is wrong.  Thakkar misconstrues *Ernie Haire Ford* and its reference to *Kabro*.  In *Ernie Haire Ford*, we merely referenced *Kabro* to support the proposition that three other circuits "have recognized that a person is not 'aggrieved' when the interests harmed by a court order are not interests the Bankruptcy Code seeks to protect or regulate." *Ernie Haire Ford*, 764 F.3d at 1326 (citing *Kabro Assocs. of West Islip*, 111 F.3d at 273–74).  In the next sentence, we held that "for a person to be aggrieved, the interest they seek to vindicate on appeal must be one that is protected or regulated by the Bankruptcy Code." *Id.*  But that was not to say that, if someone fails to assert a direct harm, he may still appeal if he attacks the inherent fairness of a proceeding.  In fact, we later said, "Allowing appeals from parties who have suffered only an indirect harm *or* who hold interests outside the scope of the Bankruptcy Code would defeat the very purpose underlying our person aggrieved standard." *Id.* (emphasis added).  In other words, a party must both show a direct harm *and* hold an interest within the scope of the Bankruptcy Code.  *See id.* at 1327 ("Assuming arguendo that Atkinson has suffered a direct harm . . . , he is still not a person aggrieved because his interest is not protected or regulated by the

10

Bankruptcy Code."). Thakkar's harm is not cognizable, *see supra* section II, much less direct. Therefore, Thakkar is not a person aggrieved, and he may not pursue this appeal.

IV.

In conclusion, Thakkar lacks standing, whether Article III or person-aggrieved. So we dismiss this appeal.

**DISMISSED.**