[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-11767

Non-Argument Calendar

————————————

In Re: WESTPORT HOLDINGS TAMPA, LIMITED
PARTNERSHIP,
WESTPORT HOLDINGS TAMPA II, LIMITED
PARTNERSHIP,

Debtors.

_____

VALLEY NATIONAL BANK,
f.k.a. USAmeribank,

Plaintiff-Appellant,

*versus*

JEFFREY WAYNE WARREN,
as Liquidating Trustee for Westport Holdings Tampa, Limited

Partnership
and Westport Holdings Tampa II, Limited Partnership,

                                        Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket Nos. 8:20-cv-01777-KKM,
8:16-bk-08167-MGW

————————————————

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Valley National Bank appeals the district court's order dismissing its appeal from the bankruptcy court's final order granting the litigation funding agreement between Jeffrey Warren (hereinafter, Liquidating Trustee) and A/Z Property Partners LLC (A/Z). The district court dismissed Valley National Bank's appeal, finding that it lacked Article III standing and "person aggrieved" standing to appeal. After review,[1] we affirm.

---

[1] We review a district court's dismissal of a case for lack of standing de novo. *Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1112 (11th Cir. 2021).

## I. BACKGROUND

In 2016, Westport Holdings Tampa, Limited Partnership (WHT I) and Westport Holdings Tampa II, Limited Partnership (WHT II) (collectively, Debtors) filed voluntary Chapter 11 bankruptcy petitions, which were jointly administered. The bankruptcy court appointed Warren as the Liquidating Trustee.

WHT I operated a continuing care retirement community named "University Village," which included (i) 446 independent living apartments; (ii) 46 independent living villas; (iii) a 110-bed assisted living facility; and (iv) a 120-bed skilled nursing facility. WHT I owned the 446 independent living apartments, WHT II owned the 46 independent living villas, and Westport Nursing Tampa, LLC (WNT)[2] owned the assisted living and skilled nursing facilities.

In May 2018, the bankruptcy court confirmed the Liquidating Trustee's first amended mediated joint plan of liquidation. Pursuant to the joint plan, all of the Debtors' causes of action became assets of the Liquidating Estate, and the Liquidating Trustee was vested with the authority to settle, sell, or dispose of any existing causes of action.

In February 2020, the Liquidating Trustee entered into an Asset Purchase Agreement with Tampa Life, wherein the Debtors

---

[2] WNT is not a debtor. Valley National Bank is a creditor for WNT.

4                    Opinion of the Court                    21-11767

agreed to sell substantially all of its assets.  In May 2020, the Florida Office of Insurance Regulation and Tampa Life entered into a consent agreement, authorizing Tampa Life to acquire the Debtors' assets.

Meanwhile, in January 2020, the Liquidating Trustee filed a complaint against Valley National Bank, creating a separate adversary proceeding.  The Liquidating Trustee asserted claims against Valley National Bank, namely, aiding and abetting a breach of a fiduciary duty and the avoidance and recovery of a fraudulent transfer of $3 million of WHT I's statutorily required minimum liquid reserves in connection with loans made by Valley National Bank to WNT.

Later, in June 2020, the Liquidating Trustee moved the bankruptcy court for authority to sell all causes of action against Valley National Bank to BRP Senior Housing Management, LLC (BRP).  Valley National Bank objected to this sale, contending that the principal of BRP, Richard Ackerman, took issue with the administrative challenges it had recently presented to the Florida Office of Insurance Regulation.  According to Valley National Bank, Ackerman allegedly threatened that BRP would acquire causes of action against it and engage in extensive litigation should it not withdraw the administrative challenges.

Ultimately, the Liquidating Trustee's proposition to sell the causes of action to BRP fell through, and the Liquidating Trustee moved the bankruptcy court to instead grant it permission to enter into a litigation funding agreement with A/Z Property Partners

(A/Z), also managed by Ackerman.  The Liquidating Trustee explained that, when the Florida Office of Insurance Regulation approved the asset purchase agreement between it and Tampa Life, it discovered that it did not have sufficient funds to consummate the closing of the sale.  The Liquidating Trustee also asserted that it had valid and substantial claims against Valley National Bank, and that A/Z wished to invest with him to facilitate the closing of the asset sale to Tampa Life, prosecute the claims against Valley National Bank, and profit if the claims were successful.

Under the agreement, A/Z would pay the Liquidating Trustee $250,000 at the closing of University Village, and then fund the costs associated with prosecuting the causes of action against Valley National Bank.  The Liquidating Trustee had to give A/Z notice of a settlement offer, and agreed to not respond to the offer until giving A/Z good faith consideration to its analysis of the offer.  The Liquidating Trustee also agreed to not make settlement offers without first giving good faith consideration to A/Z.  Finally, the Liquidating Trustee did not waive attorney-client privilege of its attorney communications, unless consent to waive such privilege was given in writing and the information was necessary to assist the litigation of claims against Valley National Bank.  Notably, the Liquidating Trustee remained the ultimate decision-maker, which Valley National Bank acknowledged.  Ultimately, the bankruptcy court granted the Liquidating Trustee permission to enter a litigation funding agreement with A/Z.

Valley National Bank appealed the order granting the litigation funding agreement to the district court, arguing the agreement was champertous under Florida law. It also argued that it had Article III standing, because the litigation funding agreement caused an injury in fact by allowing a nonparty to exert control over the adversary proceeding, influence a settlement, and prolong the litigation. It also asserted that it had "person aggrieved" standing, because such undue influence affected the integrity and fairness of the bankruptcy proceedings.

At oral argument regarding the standing issues, Valley National Bank confirmed that no settlement agreements had been extended by either party, there had been no discovery, and there had been "no movement" in the adversary proceeding between it and the Liquidating Trustee. It argued the harm specific to it was Ackerman's announcement of his "intention to acquire a cause of action" which would keep him from being able to quickly settle with the Liquidating Trustee. It contended that the Liquidating Trustee, even if he wanted to settle, would be unable to, so he could keep Ackerman, the man funding the litigation, happy.

The district court concluded that Valley National Bank lacked Article III standing and "person aggrieved" standing in order to appeal the bankruptcy court's order granting the litigation funding agreement. As to Article III standing, the court found that Valley National Bank failed to sufficiently allege a concrete injury in fact that resulted from the bankruptcy court's order, and the risk of future harm was speculative. Next, the court concluded that, even

if Valley National Bank had Article III standing, its claims still failed under "person aggrieved" standing because it suffered no direct harm from the litigation funding agreement and the interest it sought to vindicate was not protected by the Bankruptcy Code.

## II. DISCUSSION

### A. Article III Standing

A federal court's power to hear a case is limited by Article III, § 2, of the U.S. Constitution, which dictates that a federal court's judicial power is limited to cases and controversies. Thus, the doctrine of standing limits the category of litigants who may bring a lawsuit in federal court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). There are three elements to Article III standing. *Id.* A plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

An injury in fact refers to an invasion of a legally protected interest that is both (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *In re Bay Circle Props., LLC*, 955 F.3d 874, 879 (11th Cir. 2020) (*Bay Circle*). Concrete injuries must be real, not abstract. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).

For an injury to be imminent, the threatened injury must be "certainly impending" and allegations of "possible future injury" are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

8                      Opinion of the Court                 21-11767

(2013). Standing cannot rely "on a highly attenuated chain of possibilities" or speculation. *Id.* at 410-14.

Although plaintiffs need not wait for an injury to occur before filing suit, the plaintiff must still at least demonstrate that he is in immediate danger of sustaining a direct injury, meaning that the anticipated injury must occur within a fixed time period in the future. *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232-33 (11th Cir. 2019). If a plaintiff cannot show that injury is likely to occur immediately, the plaintiff lacks standing. *Id.* at 1233. Moreover, even if a plaintiff can demonstrate immediacy, he must still show that injury is "substantially likely to actually occur," and that the injury is not hypothetical or conjectural. *Id.*

The district court did not err in concluding that Valley National Bank lacked Article III standing, because Valley National Bank has not articulated a concrete, imminent injury in fact. Valley National Bank's alleged injury is not imminent, and is instead based on a speculative, highly attenuated, chain of possibilities. *See Clapper*, 568 U.S. at 409-10. Valley National Bank's alleged injury is that Ackerman, through A/Z, will unduly influence the adversary proceeding between it and the Liquidating Trustee. While Valley National Bank asserts that Ackerman threatened to subject it to lengthy litigation, importantly, neither side has offered a settlement, no discovery has occurred in their proceeding, and there has been "no movement" in the case. Because there has been no movement in the adversary proceeding, Valley National Bank's alleged

injury—extensive litigation at the hands of Ackerman—is merely speculative.

Valley National Bank's alleged injury is also based on a highly attenuated chain of possibilities. For Valley National Bank's alleged injury to come to fruition, first, a settlement offer must be made, which may or may not occur. Assuming a settlement offer is made by Valley National Bank, the Liquidating Trustee would then present that settlement to A/Z. Then, the Liquidating Trustee, although he retained the ultimate decision-making power, would have to acquiesce to A/Z's judgments regarding the offer. In this scenario, one must also assume that A/Z's judgment would be one that negatively impacts Valley National Bank and needlessly extends the litigation process. Valley National Bank's alleged injury, although possible, is clearly based on a highly attenuated chain of possibilities, which is insufficient to establish Article III standing. *See Clapper*, 568 U.S. at 409-14. Even more, this attenuated chain of events demonstrates that the alleged injury is not substantially likely to actually occur, and is instead hypothetical. *See Corbett*, 930 F.3d at 1232-33.

Thus, Valley National Bank cannot demonstrate that it has, or will, suffer an injury in fact, and fails to establish that it has Article III standing.

B. *"Person Aggrieved" Standing*

Beyond Article III standing, we have adopted the "person aggrieved" standing doctrine "as our standard for determining

whether a party can appeal a bankruptcy court's order." *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325 (11th Cir. 2014) (*Ernie Haire*). This standard restricts a plaintiff's standing more than Article III. *Bay Circle*, 955 F.3d at 879. Under this standard, a party may only appeal a bankruptcy court order if the party had a direct and substantial interest in the question being appealed. *Ernie Haire*, 764 F.3d at 1325. An "aggrieved person" is an individual who is "directly, adversely, and pecuniarily affected" by the bankruptcy court's order. *Id.* (citation and brackets omitted).

A party is not aggrieved under this standard when the only interest allegedly harmed by the bankruptcy court's order is the party's interest in "avoiding liability from an adversary proceeding." *Id.* at 1325-26. An order subjecting a party to litigation only indirectly harms that party, and orders allowing litigation to continue do not burden a party's ability to defend against liability. *Id.* at 1326. Accordingly, when a party's "sole interest is that of an adversary defendant in avoiding liability," he is not a person aggrieved by the bankruptcy court's order. *Id.* at 1327.

Additionally, a person cannot be aggrieved if the interest he seeks to validate is not protected or regulated by the Bankruptcy Code. *Id.* at 1326. Notably, an adversary defendant's interest in avoiding liability is "antithetical to the goals" of the Bankruptcy Code. *Id.* at 1327.

Finally, an individual may not meet the "person aggrieved" doctrine simply by virtue of attacking the inherent fairness of the bankruptcy proceedings. *Bay Circle*, 955 F.3d at 879. Instead, a

party must show both "a direct harm *and* hold an interest within the scope of the Bankruptcy Code." *Id.* at 880 (emphasis in original).

Even if Valley National Bank had Article III standing, its appeal is still subject to dismissal, for it does not have "persons aggrieved" standing. As explained above, Valley National Bank has suffered no direct harm based on the litigation funding agreement. Instead, its main concern is how A/Z may influence possible settlement agreements between it and the Liquidating Trustee. However, Valley National Bank is simply an adversary defendant whose sole interest is in avoiding liability by attempting to ensure that the Litigating Trustee cannot continue to pursue litigation against it. Thus, Valley National Bank is not a person aggrieved by the bankruptcy court's order. *See Ernie Haire*, 764 F.3d at 1327. This sole interest is also not an interest protected by the Bankruptcy Code. *See id.*

Valley National Bank attempts to establish standing by arguing that its claim is an attempt to preserve fairness in the bankruptcy proceedings. However, such a claim cannot establish "person aggrieved" standing. *See Bay Circle*, 955 F.3d at 879. Accordingly, Valley National Bank lacks standing under the "person aggrieved" doctrine, as well.

## C. Merits of the Litigation Funding Agreement

Valley National Bank also asks this Court to determine if the litigation funding agreement was champertous under Florida law.

However, we cannot rule on the merits of a case after finding that the plaintiff lacks standing. *See Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021). Accordingly, we decline to consider this argument.

## III. CONCLUSION

Based on the above, the district court did not err in concluding that Valley National Bank lacked both Article III standing and "person aggrieved" standing. We affirm the district court.

**AFFIRMED.**